443 F.2d 1090
 James G. BEARDEN, Appellant,
v.
STATE OF SOUTH CAROLINA and Mr. William D. Leeke, Director, Department of Corrections, et al., Appellees.
Cuthbert McInnies MIDGETT, #57853, Appellant,
v.
J. D. COX, Superintendent, Virginia State Penitentiary, Appellee.
 No. 14079.
 No. 14197.
 United States Court of Appeals, Fourth Circuit.
 June 10, 1971.
 
 William T. Toal, Greenville, S. C. (court-assigned counsel), for appellants.
 W. Luke Witt, Asst. Atty. Gen. of Va. (Andrew P. Miller, Atty. Gen. of Va., on brief), for appellee in No. 14197.
 Emmett H. Clair, Asst. Atty. Gen. of S. C. (Daniel R. McLeod, Atty. Gen., and John P. Wilson, Asst. Atty. Gen., of S. C., on brief), for appellee in No. 14079.
 Before HAYNSWORTH, Chief Judge, and SOBELOFF, BOREMAN, BRYAN, WINTER, CRAVEN and BUTZNER, Circuit Judges.
 CRAVEN, Circuit Judge:
 
 These cases present important questions:
 
 1
 (1) Whether the Sixth Amendment and the due process clause of the Fourteenth Amendment require the states to appoint counsel for indigents faced with possible revocation of parole.
 
 
 2
 (2) Whether the due process clause of the Fourteenth Amendment requires that the states grant to a parolee faced with possible revocation reasonable notice of his alleged default and opportunity to rebut the same including opportunity to be heard pro se and to present voluntary witnesses in his own behalf.
 
 
 3
 We answer the first question with a qualified "no" and the second one "yes".
 
 I.
 
 4
 Midgett's case presents the first of the questions previously framed. On November 15, 1949, Midgett was convicted of rape and sentenced to a term of 30 years in the Virginia State Penitentiary. Nearly ten years later he was paroled and remained free under supervision for nearly seven years, until on March 23, 1966, his parole status was revoked and he was returned to custody. At the time of revocation Midgett was not represented by counsel and none was proffered him. Implicit in the state's brief is the concession that if demand had been made for free counsel it would have been denied. Midgett does not urge upon us that the reason for revocation was inadequate or unlawful or that the parole authority proceeded arbitrarily and capriciously, but, instead, limits his appeal to the first question — whether an indigent has a constitutional right to have counsel furnished by the state when faced with possible revocation of parole.
 
 
 5
 The answer is to be found in the penumbra of Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). On its face, Mempa is a narrow decision limited to "the question of the extent of the right to counsel at the time of sentencing where the sentencing has been deferred subject to probation." 389 U.S. at 130, 88 S.Ct. at 254.
 
 
 6
 In his opinion for the Court, Mr. Justice Marshall reviewed the evolution of the right to counsel in a criminal trial from Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948) (during sentencing), to Moore v. Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957) (hearing after guilty plea on the degree of the crime), to Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961) (arraignment), and concluded that after Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the decided cases clearly stand for the proposition "that appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." 389 U.S. at 134, 88 S.Ct. at 257. The Court then equated "revocation of probation" with "deferred sentencing" and held that the Constitution required the assistance of counsel at "the deferred sentencing stage of the proceeding." 389 U.S. at 137, 88 S.Ct. at 258.
 
 
 7
 Undergirding the unanimous opinion are these expressed reasons for it:
 
 
 8
 (1) An assumption that counsel appointed for the purpose of trial or guilty plea would not be unduly burdened by following through at the deferred sentencing stage of the proceeding.
 
 
 9
 (2) Certain legal rights may be lost if not exercised at the time of deferred sentencing, e. g., the right of appeal and the right to withdraw a plea of guilty prior to sentencing.
 
 
 10
 In determining whether to extend the right of counsel from the deferred sentencing procedure of the original criminal trial to a revocation of parole after every stage of the trial has been completed, we think these expressed reasons advanced by the Court ought to be evaluated in the new context.
 
 
 11
 It should not lightly be assumed, we think, that counsel appointed to represent an indigent defendant at a criminal trial will not be "unduly burdened" to forever after represent him at any parole revocation hearing that may occur — in Midgett's case nearly seventeen years after the trial. There are differences of time, place, compensation and subject matter. A deferred sentencing procedure may occur soon or late after the trial,[1] but a parole revocation hearing is always late, for it cannot, of course, precede the service of at least a part of the sentence — usually one-fourth or one-third as a minimum. The venue of a deferred sentencing procedure presumably would be that of the original trial, quite probably the home town and place of business of the lawyer involved. The revocation of parole hearing would not likely be at the place of trial, but is more probably to be laid at the penitentiary or central office of the Board of Paroles. If the state should provide compensation for lawyers who defend indigents in the criminal courts, presumably it would embrace the whole criminal trial including a deferred sentencing procedure. It is not so clear that it would embrace representation before the executive branch of government in a proceeding wholly removed from the judicial process. If it is not an undue burden on a lawyer to be asked to return for a deferred sentencing procedure, it may be in part because that procedure is related to the original criminal trial and is part of it. Conduct that may have triggered the motion of the prosecutor for imposition of sentence is only one aspect of the many factors that enter into the sentencing procedure. In a sentencing procedure the whole criminal trial and all of its manifestations are the subject of discussion in an attempt to determine upon just punishment. Presumably the original trial lawyer will remember the evidence at trial sufficiently to help his representation at sentencing. The issue at parole revocation is quite different. It is no longer important what occurred at the trial, but only what has occurred thereafter with respect to rehabilitation.
 
 
 12
 If it should ever be decided that every parolee must have free counsel furnished by the state, it seems to us that the burden should not be thrust wholly upon original trial counsel, who is scarcely better able to function than would new counsel and is likely to be far removed from the venue of the parole revocation hearing. Moreover, we doubt the inherent power of the courts to compel counsel as officers of the judicial branch to perform services without compensation in the executive branch of government. So far as we know, neither South Carolina nor Virginia, nor any of the other states within this circuit, have legislatively authorized the payment of lawyers to represent parolees faced with the possibility of revocation. Thus if the Constitution compels representation by counsel, it will compel lawyers to work in non-judicial business without compensation, at least until such time, if ever, as the legislatures of the several states may appropriate voluntarily or under court order monies for such a purpose.
 
 
 13
 We hold that the Sixth Amendment and the due process clause of the Fourteenth Amendment do not require the states in every case to afford counsel to indigent parolees. In so holding, we adhere to our former decisions, Boddie v. Weakley, 356 F.2d 242 (4th Cir. 1966); Gaskins v. Kennedy, 350 F.2d 311 (4th Cir. 1962), and are in accord with the Third, Ninth and Tenth Circuits, Washington v. Hagen, 287 F.2d 332 (3rd Cir. 1960); Williams v. Dunbar, 377 F.2d 505 (9th Cir. 1967); Williams v. Patterson, 389 F.2d 374 (10th Cir. 1968), and Idaho, Heath v. State, 482 P. 2d 76 (Idaho 1971). Other circuits and state courts have indicated that they would reach a like result, even going so far as to deny or narrowly restrict the right to any hearing of any sort, see Morrissey v. Brewer, 443 F.2d 942 (8th Cir. 1971); Rose v. Haskins, 388 F.2d 91 (6th Cir. 1968); Curtis v. Bennet, 351 F.2d 931 (8th Cir. 1965); Hiatt v. Compagna, 178 F.2d 42 (5th Cir. 1949); Richardson v. Markley, 339 F.2d 967 (7th Cir. 1965); Baxter v. Commonwealth, 468 N.E.2d 670 (Mass.1971), an extreme solution we reject.
 
 
 14
 The present Chief Justice when a member of the Court of Appeals for the District of Columbia said in Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225 (1968):
 
 
 15
 No case has yet held that an interested party in an administrative or regulatory proceeding is entitled to be furnished with counsel if he cannot afford one of his own choice. We hold due process does not require that indigent parolees be provided with appointed counsel when they appear before the Parole Board in revocation proceedings.
 
 
 16
 318 F.2d at 238.
 
 
 17
 In rejecting the contention that the due process clause of the Fifth Amendment required the appointment of counsel for indigent parolees the Chief Justice had this to say:
 
 
 18
 The Bureau of Prisons and the Parole Board operate from the basic premise that prisoners placed in their custody are to be rehabilitated and restored to useful lives as soon as in the Board's judgment that transition can be safely made. This is plainly what Congress intends. Thus there is a genuine identity of interest if not purpose in the prisoner's desire to be released and the Board's policy to grant release as soon as possible. Here there is not the attitude of adverse, conflicting objectives as between the parolee and the Board inherent between prosecution and defense in a criminal case. Here we do not have pursuer and quarry but a relationship partaking of parens patriae. In a real sense the Parole Board in revoking parole occupies the role of parent withdrawing a privilege from an errant child not as punishment but for misuse of the privilege. "Probation workers making reports of their investigations have not been trained to prosecute but to aid offenders." Williams v. People of State of New York, 337 U.S. [241] at 249, 69 S.Ct. [1079] at 1084 [93 L.Ed. 1337]. Perhaps the more correct view is that retributive justice is satisfied by the conviction whereas the sentence is a process of treatment. It is important to bear this in mind in determining whether there would be any gain to the parolee or to society in taking steps urged by the dissenting opinions which tend to equate parole processes with criminal prosecutions.
 
 
 19
 318 F.2d at 237-238.
 
 
 20
 In Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), Mr. Justice Black noted the distinction between a paroled prisoner and one presumptively innocent of crime: "He can be rearrested at any time the board or parole officer believes he has violated a term or condition of his parole, and he might be thrown back in jail to finish serving the allegedly invalid sentence with few, if any, of the procedural safeguards that normally must be and are provided to those charged with crime." 371 U.S. at 242, 83 S.Ct. at 377 (emphasis added).
 
 
 21
 In rejecting Midgett's contention that every parolee faced with the possibility of revocation has an absolute right to the assistance of counsel, we do not reject or undermine our decision in Hewett v. North Carolina, 415 F.2d 1316 (4th Cir. 1969). Hewett fell squarely within the rationale of Mempa v. Rhay — unless that decision was to be read so narrowly that it was without significance except in the context of the singular Washington state procedure with which it dealt. The result in Hewett was, we think, compelled by the very language of Mempa, for, as previously noted, Mr. Justice Marshall's opinion equates "revocation of probation" with "deferred sentencing". Mempa means, we think, that there is a constitutional right to counsel at every stage of a criminal proceeding and that one of those stages is revocation of probation. As Judge Winter said in Hewett, "while the right to counsel applies to `criminal proceedings,' we have little doubt that the revocation of probation is a stage of criminal proceedings." 415 F.2d at 1322.
 
 
 22
 Quite recently in United States ex rel. Bey v. Connecticut State Board of Parole, 443 F.2d 1079 decided May 17, 1971, the Second Circuit held that all state parolees are entitled to legal representation at parole revocation hearings that result in their reincarceration. Bey was released on parole from the Connecticut State Prison on June 10, 1960, where he had been serving a life term for second degree murder. He was arrested and his parole revoked about six months later and he has been confined under the murder sentence for the past decade. The only "clear violation of a parole condition" was the possession of a hunting knife which the parole officer himself characterized as "in itself not of tremendous import." What apparently brought about revocation was simply unconventional behavior involving moral concepts and Bey's penchant for progressively disappointing, annoying, and disturbing his employers, and eventually his parole officer. We are not in disagreement with the Second Circuit that in a case of such factual complexity involving psychiatric evaluation and disputed behavior and its significance, the assistance of counsel would be valuable to the parolee, and probably helpful to the parole board in determining upon which one of its several options might best dispose of Bey's case. But we are respectfully of the opinion that a hard case makes a poor vehicle for fashioning a broad rule of entitlement to counsel for all parolees regardless of the degree of certainty and nature of their violations of parole conditions. It would have sufficed, we think, to have simply held Bey entitled to the assistance of counsel.
 
 
 23
 It remains for us to consider whether an indigent parolee may ever in a given case be entitled to the benefit of free counsel furnished by the state. In Jones v. Rivers, 338 F.2d 862 (4th Cir. 1962), Judge Sobeloff concurred in the decision that there is no absolute constitutional right to counsel for an indigent faced with possible parole revocation, but insisted that the appointment of counsel is required "where the accused parole violator is indigent and denies that he has violated the conditions of his parole." 338 F.2d at 878. Judge Haynsworth, also concurring, expressed the viewpoint that the assistance of counsel is not essential to fairness in routine revocation hearings. He thought the Constitution required a parole board to furnish free counsel for the parolee only in the extraordinary case when the fairness of the proceeding would be impaired by counsel's absence.
 
 
 24
 We presently adopt the empirical rule of Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), fully aware that in adopting a case-by-case approach articulation of where the line should be drawn between those who should have been supplied with counsel and those lawfully refused such assistance is a most difficult undertaking. That Betts proved unworkable after 21 years of experimentation, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), does not mean, we think, that its rationale cannot be reasonably satisfactory in the administrative as opposed to the judicial context. Also, there may be other expedients short of the assistance of legal counsel that may suffice to satisfy fundamental fairness and due process. For example, Judge Wright has suggested assigning a parole or probation officer other than the officer initiating a revocation procedure to the duty of assisting the parolee:
 
 
 25
 With me, however, the primary attribute of a good parole system is a liberal parole policy. Requiring a full-dress second trial, even limited to questions of fact, would, in my judgment, militate against such a policy. Right to assigned counsel and compulsory process in revocation proceedings are obviously desirable, but the price in terms of the number of persons paroled, or more accurately, not paroled, may be too high. For the time being I would accept the nonadversary hearing with a probation officer assisting the parolee. As stated in the text, I believe that such protection conforms with the current concept of due process and it is possible within the statutory framework. Compare Greene v. McElroy, 360 U.S. 474, 507-508, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959).
 
 
 26
 Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225, 261 n. 1. (1963).
 
 II.
 
 27
 Bearden's case presents the second question. He was sentenced to a term of life imprisonment for murder in November 1938. He was paroled after serving a little more than seven years, and had been free under supervision for more than four years when he was arrested in August 1949 for an alleged violation of the conditions of probation. Imprisoned for another seven years, Bearden was again paroled on September 12, 1957. This parole was revoked on July 24, 1958, and Bearden is presently in custody.
 
 
 28
 It has been settled federal "practice for more than 50 years * * * to allow a prisoner a hearing but not representation by counsel." Washington v. Hagan, 287 F.2d 332, 334 (3rd Cir. 1960). Although notice and opportunity to be heard are not constitutional prerequisites to the issuance of a parole violator warrant, Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935), we think due process and fundamental fairness dictate a holding that within a reasonable period after arrest upon such a warrant the parolee is entitled to notice of his alleged default and opportunity to rebut the same, including the right to be heard pro se before someone representing the Board, and to present voluntary witnesses in his own behalf. See Alverez v. Turner, 422 F.2d 214, 220 (10th Cir. 1970); Boddie v. Weakley, 356 F.2d 242 (4th Cir. 1966); Rose v. Haskins, 388 F.2d 91, 97 (6th Cir. 1968) (Celebrezze, J., dissenting); Chase v. Page, 456 P.2d 590 (Okl.Cr. 1969); State ex rel. Murray v. Swenson, 196 Md. 222, 76 A.2d 150, 154 (1950). Cf. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (termination of welfare payments prior to a hearing violates the due process clause).
 
 
 29
 We do not read South Carolina's brief to urge a contrary rule. Indeed, the South Carolina Director of the Department of Corrections insists that Bearden has been accorded three parole revocation hearings, the last one, at least, with the assistance of self-employed counsel. Bearden contends that the hearings were unfair, with or without counsel, and that the issue before the parole board was extraordinary enough to require assistance, preferably by counsel, but, at the very least, by assignment of a parole officer to help him. One of the questions sought to be presented arises out of a change in the parole law of South Carolina after Bearden's first parole and prior to his second one, and the effect, urged to be ex post facto, of a new parole statute assertedly changing conditions of parole unfairly and unconstitutionally.
 
 
 30
 Because the district judge conducted no hearing, the facts are not at all clear in the record. Indeed, Bearden's contentions are not even clear, and the best that court-appointed counsel for him in this court could do is to state in the brief "It may be fairly assumed from his factual allegations that he protests the failure to be afforded the opportunity to be heard and the failure of the board to notify him of the charged violations."
 
 
 31
 In this state of the record we must remand for an evidentiary hearing. Prior to the hearing the District Court should allow Bearden to plead with more particularity his contention that the 1958 revocation was unfair and illegal. The hearing should relate only to the validity of the 1958 revocation for it is clear that Bearden's release on parole in 1957 mooted questions involving the revocation of his parole in 1949.
 
 
 32
 No. 14079 — Bearden's case reversed and remanded.
 
 
 33
 No. 14197 — Midgett's case affirmed.
 
 
 
 Notes:
 
 
 [1]
 We may judicially notice that the period of probation is often no more than a year or two. By statute, it cannot exceed: (1) in Maryland, five years, Md.Ann. Code Art. 27, Section 641A; (2) in North Carolina, five years, N.C.Gen.Stat., Section 15-200; (3) in South Carolina, five years, S.C.Code, Section 55-594; (4) in Virginia, a "reasonable time, having due regard to the gravity of the offense, without regard to the maximum period for which the prisoner might have been sentenced," Va.Code, Section 53-272; (5) in West Virginia, five years, W.Va.Code, Section 62-12-11
 
 
 
 34
 WINTER, Circuit Judge (concurring in part and dissenting in part).
 
 
 35
 Insofar as the majority holds that the Sixth and Fourteenth Amendments do not guarantee the right of a parolee to counsel at his parole revocation hearing, I respectfully dissent.[1]
 
 
 36
 * The basic error in the majority's opinion is its niggardly reading of Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). However facially limited was the exact question decided in the case, the case holds "that appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." (emphasis supplied.) 389 U.S. at 134, 88 S.Ct. at 257.[2]
 
 
 37
 I cannot read Mempa, as the majority apparently does, to rest on the premise that the degree of burden on the convenience of counsel is a determining factor of whether the right to counsel attaches. True, the Court commented at the end of its opinion that "[w]e assume that counsel appointed for the purpose of the trial on guilty plea would not be unduly burdened by being requested to follow through at the deferred sentencing stage of the proceeding." 389 U.S. at 137, 88 S.Ct. at 258. But the comment appears to be little more than an aside about the practical effect of the decision. To me, the factor of burden on counsel is largely irrelevant.[3] Rather, Mempa rests squarely on the propositions, first, that appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected and, second, that the loss of liberty which may result from a revocation of probation or deferred sentencing is a substantial right.
 
 
 38
 The right to continued liberty — the ultimate issue in a parole revocation hearing — is the same substantial right. When that right depends upon disputed questions of fact, I have no difficulty in concluding that there is also a right to counsel, for, as said by the Court in Mempa, "the necessity for the aid of counsel in marshaling the facts, introducing evidence of mitigating circumstances and in general aiding and assisting the defendant to present his case * * * is apparent." 389 U.S. at 135, 88 S.Ct. at 257. A parole revocation hearing, like a probation revocation hearing or "deferred" sentencing, is an accusatory and adversary proceeding. The parole board performs the same function as a judge. In oral argument, counsel for Virginia advised us that the Virginia parole board not only determines whether a parole violation has occurred, but also has discretion to continue parole despite the violation.[4] Certainly, the parole officer who initiates the proceedings and has investigated the facts of the alleged violation plays a role analogous to that of a prosecutor. Revocation of parole, like revocation of probation, is often based on the alleged commission of criminal offenses for which the accused is never tried. This fact was given significant weight in Mempa (389 U.S. at 136-137, 88 S.Ct. 254), with regard to probation revocation hearings, and highlighted the necessity for counsel to protect the accused from imprisonment for crimes never committed.
 
 
 39
 Thus, I would conclude that Mempa requires us to hold that the Sixth and Fourteenth Amendments give to a parolee the right to counsel at a parole revocation hearing. Our prior decisions in Jones v. Rivers, 338 F.2d 862 (4 Cir. 1964), Gaskins v. Kennedy, 350 F.2d 311 (4 Cir. 1962), and Boddie v. Weakley, 356 F.2d 242 (4 Cir. 1966), all of which were decided before Mempa, should be overruled to the extent that they are inconsistent with this conclusion.[5]
 
 
 40
 There is, as the majority demonstrates, an apparent numerical majority of decisions from other jurisdictions supporting the majority's view.[6] But, in my judgment, the better reasoned cases reach the result I would reach.[7] Certainly, it is one recommended by legal scholars and various study commissions.[8] One of the most persuasive opinions is that in People ex rel. Menechino v. Warden, Green Haven St. Pris., 27 N.Y.2d 376, 318 N.Y.S.2d 449, 267 N.E.2d 238 (1971).[9] In that case, Chief Judge Fuld, writing for the court, indicated that our decision in Hewett dictates the result we should reach here. Chief Judge Fuld also effectively answered the concepts, lurking in the majority's opinion and articulated more fully in some of the authorities on which it relies, that somehow the rules with regard to counsel are different with regard to parole revocation hearings because they are "administrative" in nature, or because the parole board bears a relationship of parens patriae to the parolee, or because the presence and participation of counsel at a parole revocation hearing would impair the benevolent objectives of the parole system. After carefully pointing out that in order to return a parolee to prison a parole board must make factual determination as to the truth of specific allegations of misconduct, Chief Judge Fuld stated:
 
 
 41
 [c]ertainly, a "parole court" or a parole board panel may not be permitted — simply because it is an administrative body rather than a judicial tribunal — to base its determination, having so serious an impact on the lives of the individuals who appear before it, on a possibly mistaken view of the facts owing to the parolee's inability to make a proper factual presentation. In the present case, for instance, counsel would have been able not only to analyze and question the accuracy of the parole supervisor's report but also would have been available to deduce and marshal the facts necessary to refute the technical and rather ambiguous charge of "consorting."[10]
 
 He then added:
 
 42
 It is for reasons such as these that the Supreme Court, rejecting all efforts to limit the right to counsel to the narrow confines of "criminal prosecutions" under the Sixth Amendment, has treated such right as an essential element of due process, applicable to all proceedings, whether they be classified as civil, criminal or administrative, where individual liberty is at stake. * * * No matter how the proceeding be characterized, the demands of due process, under both the United States Constitution and the Constitution of New York State, require that a parolee be represented by a lawyer, and entitled to introduce testimony, if he so elects. The constitutional guarantee demands no less if the search for truth is not to be sacrificed to administrative speed and convenience.[11]
 
 And finally he stated:
 
 43
 It is desirable, * * * to indicate that the hearings we are directing must not be permitted to unreasonably delay the proceedings. The presence of an attorney, the receipt of testimony offered by the parolee, are required in order to enable the board to ascertain the facts, pro and con, upon which it is to make its determination. In other words, participation by counsel need be no greater than is required to assure, to the board as well as to the parolee, that the board is accurately informed of the facts before it acts, and the permitted presentation of testimony by the parolee need be no greater than is necessary for that same purpose.
 
 
 44
 Meeting these requirements will not, we hasten to interpolate, occasion the slightest relaxation of supervisory control over parolees. It is the board alone which is to ascertain the facts and decide their ultimate importance. The presence of counsel is merely designed to afford the prisoner an added measure of protection; the receipt of testimony which he may offer is one of the fundamentals of fair play. Together, these two elements, the presence of counsel and the receipt of evidence, constitute the essential characteristics of our system of administration of justice.[12]
 
 II
 
 45
 Having established what I think the general rule should be, I come to the precise disposition of Midgett's case. Midgett asserts that he is entitled to relief solely because it is established that he did not have counsel and because it is conceded that he would not have been furnished counsel even if he had requested it. I would not grant the writ or require the state to consider the revocation of Midgett's parole on this showing alone, but I would remand the case to the district court for a determination of whether the absence of counsel was harmless error under Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). This was the procedure followed in Coleman v. Alabama, 399 U.S. 1, 11, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), another denial of the right to counsel case. It is implicit in the concurring opinion in Jones v. Rivers, supra, and it is one which we adopted in Kemplen v. Maryland, 428 F.2d 169 (4 Cir. 1970). See also, Earnest v. Moseley, 426 F.2d 466 (10 Cir. 1970).
 
 
 46
 SOBELOFF and BUTZNER, Circuit Judges, authorize me to state that they concur in this opinion.
 
 
 
 Notes:
 
 
 [1]
 The issue is directly presented and decided in Midgett's appeal. The issue is also presented in Bearden's appeal. Bearden was paroled twice in 1945 and 1957, and these paroles were revoked in 1949 and 1958, respectively. Bearden alleged that he was denied counsel at the 1949 revocation hearing. A state judge, after plenary hearing, found the allegation well-founded and ordered his release. On appeal the order was reversed on the ground that Bearden was being held pursuant to the 1958 revocation of parole. Bearden v. Manning, 238 S.C. 187, 119 S.E.2d 670 (1961). I would accept the finding that Bearden had no counsel at the 1949 revocation hearing. While Bearden is presently incarcerated as a result of the 1958 revocation of parole, he has alleged that the conditions of his 1957 parole were more onerous than those of his original 1945 parole. The record is not clear as to what the conditions of the 1957 parole were, the reasons why it was revoked in 1958, or the circumstances of the 1958 revocation, i. e., whether Bearden was present and had counsel. These are factual questions which I would have explored on remand. A new parole revocation hearing for Bearden under the terms of the original 1945 parole may be in order if the district court finds the conditions of the 1957 parole, or its revocation, were dependent upon the 1949 revocation. Even if revocation of the 1945 parole is found to have had no effect on the 1957 parole or its revocation in 1958, a new parole revocation hearing under the terms of the 1957 parole may be in order if it is found either that Bearden was not present or did not have the opportunity to be represented. As to these issues the record is silent. For these reasons, as well as the fact that I agree that Bearden was entitled to notice of his alleged violation of parole and an opportunity to rebut the same, I concur in the majority's judgment
 
 
 [2]
 A panel of this Court so construedMempa in Hewett v. State of North Carolina, 415 F.2d 1316 (4 Cir. 1969), when we held that there was a right to counsel at a probation revocation hearing, although two members of that panel now subscribe to the majority opinion in the instant case.
 
 
 [3]
 I call attention to the fact that when Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), was decided, few jurisdictions, including the federal government, had adopted legislation to provide compensation for court appointed counsel. Even when Congress finally responded by enacting the Criminal Justice Act of 1964, Pub.L. 88-455, compensation for counsel was not provided for significant areas in which, by later court decisions, counsel was subsequently required. Under the original Act, counsel was compensated solely for services rendered during trials before district courts and commissioners and for arguing appeals in courts of appeals. But the larger gaps were filled by the enactment of Pub.L. 91-447, amending the 1964 Act. Under the existing statute, 18 U.S.C.A. § 3006A(a) (g), as so amended, counselmust be appointed, inter alia, when the Sixth Amendment requires the appointment of counsel and, as a discretionary matter, counsel may be appointed for an indigent who is subject to revocation of parole. The existing statute is thus sufficient to provide counsel in a federal parole revocation hearing. The states have a similar history of legislative response, although it will not be stated in detail. The conclusion to be drawn is that, while there may be a temporary period of financial hardship on court-appointed counsel, the legislative branch of government has and will respond to the financial impact of extension of the right to counsel doctrine on members of the bar.
 I see no reason for concern over whether original trial counsel should or should not be counsel at a parole revocation hearing. Manifestly, the issues at a parole revocation hearing will differ from the issues at the original trial. It follows that original trial counsel may be counsel also at the parole revocation hearing, but he need not be if there is good reason to appoint another lawyer.
 
 
 [4]
 The Virginia Parole Board's discretionary authority is codified in Code of Virginia (1970 Cum.Supp.) § 53-262. By contrast, in Bearden's case, the South Carolina Parole Board had a more limited function. If it finds that there has been a violation of a condition of parole the prisoner must be returned to serve the part of the sentence which remains unserved. However, the prisoner is made eligible for a successive parole thereafter "when and if the Board thinks such parole would be proper." Code of S.C. (1970 Cum.Supp.) § 55-616
 
 
 [5]
 Each of these cases relied heavily, as does the majority in the instant case, on Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225 (1963). Although decided approximately three weeks after the landmark decision of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), on the right to counsel,Hyser fails to mention Gideon. Of course, Mempa, which represented an extension of Gideon, did not follow until four years later, so that it could not have been considered. For these reasons, I do not find Hyser a persuasive authority. See discussion in K. Davis, Administrative Law Treatise (1970 Supp.) § 7.16 at p. 352.
 
 
 [6]
 The cases are collected and perceptively analyzed in United States ex rel. Bey v. Conn. State Bd. of Parole, 443 F.2d 1079 (2 Cir., 1971). Judge Irving R. Kaufman, the author of the opinion inBey began his analysis by stating "[p]recedent on the precise issue before us is conflicting and its significance is difficult to assess." 443 F.2d at 1083. He, nevertheless, demonstrates conclusively that most of the cases denying the right to counsel were either decided prior to Mempa, or, if decided after Mempa, were decided before (or if decided after, failed to consider) Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), a decision which undermines Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935), in which the dictum was stated that probation was a matter of "grace," from which several circuits have reasoned that there cannot be a right to counsel in parole revocation proceedings. 443 F.2d at 1084, n. 11. Interestingly enough Judge Kaufman reads Hewett v. North Carolina, 415 F. 2d 1316 (4 Cir. 1969), as casting serious doubt on Jones v. Rivers, 338 F.2d 862 (4 Cir. 1964). By our decision in Caulder v. Durham Housing Authority, 433 F.2d 998 (4 Cir. 1970), cert. den., 401 U.S. ___, 91 S.Ct. 1228, 28 L.Ed.2d 539 (1971), we demonstrated full appreciation of the scope of Goldberg v. Kelly, supra.
 
 
 [7]
 United States ex rel. Bey v. Conn. St. Bd. of Parole, 443 F.2d 1079 (2 Cir. 1971); Goolsby v. Gagnon, 322 F.Supp. 460 (E.D.Wis.1971); Commonwealth v. Tinson, 433 Pa. 328, 249 A.2d 549 (1969); Warren v. Michigan Parole Board, 23 Mich.App. 754, 179 N.W.2d 664 (Ct.App.1970), appeal dismissed, Mich., 184 N.W.2d 457 (1971); People ex rel. Menechino v. Warden, Green Haven St. Pris., 27 N.Y.2d 376, 318 N.Y.S.2d 449, 267 N.E.2d 238 (1971)
 
 
 [8]
 The impressive array of enlightened view that the right to counsel at parole revocation hearings does or should attach is collected in United States ex rel. Bey v. Conn. St. Bd. of Parole, 443 F.2d at 1085, n. 12:
 Standards approved by the House of Delegates of the American Bar Association in February, 1966, recommended that counsel be provided in connection with both probation and parole revocation proceedings. See ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Providing Defense Services 68 (1967). The ABA Project on Minimum Standards of Criminal Justice, Standards Relating to Probation § 5.4(a) (ii) (Approved Draft, 1970) recommends counsel at all probation revocation hearings. The ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Providing Defense Services § 4.2 (Approved Draft, 1968) would require that counsel be provided in all post-conviction proceedings "which are adversary in nature." Both the President's Commission on Law Enforcement and the Administration of Justice, Report: The Challenge of Crime in a Free Society 150 (1967) and its task force reports on The Courts 54 (1967) and Corrections 86-88 (1967), recommend that counsel be provided for probation and parole revocation hearings. The American Law Institute, Model Penal Code § 305.15(1) (Proposed Official Draft 1962) provides that a parolee "shall be permitted to advise with his own legal counsel" in preparing for parole revocation hearings. See also, id. § 301.4 (right "to be represented by counsel" at probation revocation hearings). See W. Cohen, Due Process, Equal Protection and State Parole Revocation Hearings, 42 U. Colo.L.Rev. 197 (1970); Note, Constitutional Law, Parole Status and the Privilege Concept, 1969 Duke L.J. 139; Note, Parole Revocation in the Federal System, 56 Geo.L.J. 705, 719-26 (1968). Cf. Comment, Freedom and Rehabilitation in Parole Revocation Hearings, 72 Yale L.J. 368 (1962).
 
 
 [9]
 InMenechino the parolee was charged with having violated the conditions of his parole by associating "with individuals having a criminal record" and by giving "false and misleading information" to his parole supervisors. Unrepresented by counsel, the parolee agreed to the board's characterization of his relationship with certain ex-convicts as "consorting" and admitted that he had falsely denied knowing them. Although there was no evidence that the parolee had committed a crime or participated in any criminal activity, the board ordered his parole revoked and barred him from being considered for parole for at least two years.
 
 
 [10]
 In accord, Judge Kaufman inBey stated:
 "The fact that the Board performs a predictive and prognostic function does not depreciate the importance of accurate factual exposition and evaluation. Less educated or intelligent prisoners are particularly likely to suffer from absence of trained legal assistance." 443 F.2d at 1088.
 This statement follows a detailed demonstration of how the parole board may only act after it finds the fact, how counsel might have been of substantial assistance in finding the facts and law, and how on the facts of that case, "a diligent lawyer representing Bey * * * might have investigated the decisive events of Bey's brief period of release and in an orderly, disciplined presentation to the Board have attempted" to make a more favorable presentation and been of more aid to the Board in making a correct disposition of the matter than the parole officer and the Board's executive secretary.
 
 
 [11]
 Omitted from the text, for convenience of reading, are citations to other cases establishing the right to counsel in other contexts. One of the most important is In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), which held the right to counsel applies to juvenile delinquency proceedings. Its significance lies in its rejection of the argument that the parens patriae relationship of a judge of a juvenile court to the juvenile justified departure from strict application of constitutional principles, including Sixth Amendment rights. Rather, the Court concluded that the appearance, as well as the actuality, of fairness, impartiality and orderliness "may be a more impressive and more therapeutic attitude so far as the juvenile is concerned," because the juvenile would think that he had been treated fairly and his hostility to rehabilitative efforts would not be aroused. 387 U.S. at 26, 87 S.Ct. at 1443. The analogy between a juvenile court proceeding and a parole board revocation hearing and the analogy between an allegedly delinquent juvenile and an alleged parole violator are self-evident. Indeed, as Judge Kaufman stated inBey: "One certain way to increase a prisoner's sense of resentment and to discourage his will eventually to return to a normal life would be to deny him basic safeguards essential to the fundamental fairness of a decision to deprive him of the liberty he gained upon parole release." 443 F.2d 1089.
 In addition to the cases cited by Chief Judge Fuld, an overview of the whole ambit of right to counsel cases from Gideon (right to counsel at trial, overruling Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), which the majority now seeks to revive) to Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed. 2d 387 (1970) (counsel at preliminary hearing), lends support to the conclusion that the Court means a literal application of the Mempa test that counsel is required at every stage of a criminal proceeding where substantial rights of an accused may be affected, viz: Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (custodial interrogation), and United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed. 2d 1178 (1967) (lineup). These cases, as well as other right to counsel cases cited elsewhere in this opinion, have one aspect in common: the right to counsel was held applicable to a facet of the criminal process where what occurred might have a significant effect on an accused's ultimate loss of liberty — the very issue in a parole revocation proceeding.
 
 
 [12]
 In accord are the views of the Second Circuit inBey. There, Judge Kaufman wrote for the court:
 "But the state has demonstrated no respect in which the presence of counsel for the limited purpose of developing and evaluating relevant events of a parolee's history on parole, and of recommending alternative dispositions to revocation, will tend to inhibit or constrict the parole process. Indeed, representation of parolees at revocation hearings should advance, not retard, the `modern concept of individualized punishment' and rehabilitation. * * * As distinct from other elements of trial-type due process, * * * a lawyer's participation should not be permitted to impede the flow of relevant information to the parole board. Indeed, competent counsel should augment the flow and the board, as well as the parolee, should benefit from a trained lawyer's capacity to guard against error and distortions. To the extent that a lawyer who misconceives his role in the parole process might resort to dilatory or distracting tactics or equate it with his role in the trial of a case, the board does not lack the power to so structure the proceedings as to maximize the lawyer's contribution and minimize his potential for disruption."