**Don F. WOOD**

v.

**SUPERINTENDENT CAROLINE CORRECTIONAL UNIT.**

**Civ. A. No. 615–72–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Feb. 20, 1973.

---

Don F. Wood, pro se.

Wm. A. Carter, III, Asst. Atty. Gen. of Virginia, Richmond, Va., for defendant.

### MEMORANDUM

MERHIGE, District Judge.

This habeas corpus action presents, *inter alia*, the important question of whether the rule enunciated in Arger-

singer v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), applies to cases in which an indigent misdemeanant, convicted without benefit of counsel, was fined and not sentenced.

■ Don Wood, a Virginia prisoner, brings this habeas corpus action pro se pursuant to 28 U.S.C. § 2254.[1] Petitioner is currently detained pursuant to a third conviction before the Corporation Court of the City of Lynchburg of November 6, 1969, for petty larceny. Sentence was suspended on that date, but said suspension was revoked on July 14, 1970, upon Wood's fourth conviction for petty larceny. Having served his sentence for his fourth petty larceny conviction, Wood is now serving time on the revoked suspension, which sentence expires on September 14, 1973.[2]

Wood received his third petty larceny sentence pursuant to Va.Code § 19.1–293, which provides:

§ 19.1–293. Confinement of person convicted of petit larceny previously sentenced for like offenses.—When a person is convicted of petit larceny, and it is alleged in the indictment on which he is convicted, and admitted, or found by the jury or judge before whom he is tried, that he has been before sentenced in the United States for the like offense, he shall be confined in jail not less than thirty days nor more than one year; and for a third, or any subsequent offense, he shall be confined in the penitentiary not less than one nor more than two years.

■ The effect of this section is to convert petty larceny, which is upon first and second convictions a misdemeanor, to a felony for third and subsequent convictions. Wood here attacks not the felony convictions of November 1969 and July 1970, but rather the un-

---

1. Wood has styled his petition "Petition for Writ of Mandamus" and claims to be seeking declaratory and injunctive relief. This action, however, is properly habeas corpus and will be treated as such by the Court.

2. Wood is not scheduled for release until 9/14/74 because he must also serve time for a credit card fraud conviction of 9/14/70.

derlying misdemeanor convictions of December 12, 1953 and June 2, 1969. Wood pleaded guilty to both charges and received punishment for same consisting of, respectively, fines of $6.23 and $26.-25. No jail sentences were imposed for these convictions nor was Wood, an indigent [3], afforded assistance of counsel at that time, the state of Virginia not having provision for appointment of counsel in misdemeanor cases.

■ Wood's basic claim here is that the first two misdemeanor convictions were unconstitutional by virtue of the state's failure to provide him with appointed counsel.[4] If he is sustained in this contention, the requisite elements of § 19.1–293 (two previous petty larceny convictions) would be lacking and the July 14, 1970 and November 6, 1969 sentences thereby void.

In order to succeed in the present petition, Wood must sustain two contentions:

1. That *Argersinger, supra,* 407 U.S. 25, 92 S.Ct. 2006, is retroactive so as to allow the original two convictions which preceded *Argersinger* to be weighed thereunder, and

2. That *Argersinger* properly applies to the two convictions complained of.

■ Because the Virginia Supreme Court in Potts v. Slayton, 213 Va. 432, 192 S.E.2d 780 (1972) determined that *Argersinger* should not apply retroactively, Wood's efforts to prosecute these contentions in state courts would be rendered fruitless. Accordingly, he is relieved of the necessity to exhaust state remedies. 28 U.S.C. § 2254(b).

In its present posture, this action is now before the Court pursuant to respondent's motion to dismiss. Wood, given an opportunity to respond thereto, has done so. Accordingly, the Court finds this matter ripe for disposition. There are no factual controversies herein, the sole issue being the application of *Argersinger* in the present action.

■ As an initial matter, the Court notes that Wood has standing to maintain his claims here as his present confinement is directly affected by the convictions complained of. See Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968).

■ Wood's first contention, that *Argersinger* is retroactive, has been previously sustained by the United States Court of Appeals for the Fourth Circuit in Marston v. Oliver, No. 71–1329 (Jan. 7, 1972) and by this Court, notwithstanding the *Potts* decision. The Court need not restate the rationale of this holding here. See Herndon v. Superintendent, 351 F.Supp. 1356 (D.C.1972).

The sole remaining issue therefore is whether the *Argersinger* holding applies to the instant convictions complained of.

The majority opinion in *Argersinger, supra,* 407 U.S. at 37, 92 S.Ct. at 2012, clearly confined the assistance of counsel requirement to petty offenses when the punishment therefor is confinement:

> We must conclude, therefore, that the problems associated with misdemeanor and petty offenses often require the presence of counsel to insure the accused a fair trial. Mr. Justice Powell suggests that these problems are

---

3. There is some question as to Wood's financial status at the time of these convictions. Were Wood able to afford counsel, the Court must necessarily conclude that he lacked standing to raise an *Argersinger* claim as he does here. However, Wood's pleadings in numerous instances assert his lack of funds, particularly with respect to the period of 1969 onward. These assertions are uncontroverted upon the record. Additionally, respondent's pleadings raise no objection on this basis to Wood's standing to assert this claim.

This Court is duty bound, under the circumstances, to presume that Wood did not waive his rights to counsel, Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and was in fact indigent.

4. Wood also attacks the constitutionality of § 19.1–293. He is barred, however, from asserting this claim by virtue of his previous unsuccessful assertion thereof in Wood v. Slayton, C.A. 235–72–A–M, (Dec. 8, 1972).

raised even in situations where there is no prospect of imprisonment. *Post,* at 48, [92 S.Ct. at 2018]. We need not consider the requirements of the Sixth Amendment as regards the right to counsel where loss of liberty is not involved, however, for here, petitioner was in fact sentenced to jail. And, as we said in Baldwin v. New York, 399 U.S. [66], at 73, [90 S.Ct. 1886, 26 L. Ed.2d 437], "the prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or 'petty' matter and may well result in quite serious repercussions affecting his career and his reputation."

We hold, therefore, that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial. (Footnotes omitted).

Nevertheless, as Mr. Justice Powell states in his learned concurrence, the logic of the majority holding points to extension of the Argersinger rule to petty offenses where imprisonment is not imposed:

The rule adopted today does not go all the way. It is limited to petty offense cases in which the sentence is some imprisonment. The thrust of the Court's position indicates, however, that when the decision must be made, the rule will be extended to all petty offense cases except perhaps the most minor traffic violations. If the Court rejects on constitutional grounds, as it has today, the exercise of any judicial discretion as to need for counsel if a jail sentence is imposed, one must assume a similar rejection of discretion in other petty-offense cases. It would be illogical—and without discernible support in the Constitution—to hold that no discretion may ever be exercised where a nominal jail sentence is contemplated and at the same time endorse the legitimacy of discretion in "non-jail"

petty offense cases which may result in far more serious consequences than a few hours or days of incarceration. The Fifth and Fourteenth Amendments guarantee that property, as well as life and liberty, may not be taken from a person without affording him due process of law. The majority opinion suggests no constitutional basis for distinguishing between deprivations of liberty and property. In fact, the majority suggests no reason at all for drawing this distinction. The logic it advances for extending the right to counsel to all cases in which the penalty of any imprisonment is imposed applies equally well to cases in which other penalties may be imposed. Nor does the majority deny that some "non-jail" penalties are more serious than brief jail sentences.

Thus, although the new rule is extended today only to the imprisonment category of cases, the Court's opinion foreshadows the adoption of a broad prophylactic rule applicable to all petty offenses. No one can foresee the consequences of such a drastic enlargement of the constitutional right to free counsel. But even today's decision could have a seriously adverse impact upon the day to day functioning of the criminal justice system. We should be slow to fashion a new constitutional rule with consequences of such unknown dimensions, especially since it is supported neither by history nor precedent. 407 U.S. at 51–52, 92 S.Ct. at 2019–2020.

The reasons for abandoning the imprisonment-fine distinction are compelling:

Serious consequences also may result from convictions not punishable by imprisonment. Stigma may attach to a drunken driving conviction or a hit-and-run escapade. Losing one's driver's license is more serious for some individuals than a brief stay in jail. In Bell v. Burson, 402 U.S. 535 [91 S.

Ct. 1586, 29 L.Ed.2d 90] (1971), we said:

"Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." *Id.* at 539 [91 S.Ct., at 1589].

When the deprivation of property rights and interests is of sufficient consequence, denying the assistance of counsel to indigents who are incapable of defending themselves is a denial of due process. 407 U.S. at 48, 92 S.Ct. at 2018. (Powell, J., concurring).

■ Nevertheless, the Court at this juncture of the development of the law must choose one of three approaches:

1. Conclude that the *Argersinger* rationale applies to all misdemeanors or to a specifically defined class thereof: In particular, conclude that it applies to all misdemeanors in which imprisonment is a potential punishment, regardless of what the punishment actually was in a given case;

2. Conclude that it was the intent of the Supreme Court to confine its *Argersinger* ruling to misdemeanors involving imprisonment for the reason that due process does not require its extension to misdemeanors involving fines.

3. Conclude that the *Argersinger* rationale should apply to those non-imprisonment cases in which fundamental fairness, pursuant to the Fourteenth Amendment due process clause, mandates the appointment of attorneys.

The Court is inclined to the third alternative with reservations. For the reasons stated by Mr. Justice Powell, the Court is unwilling to conclude that due process confines the right of counsel *solely* to misdemeanor offenses resulting in imprisonment. Nothing in the majority opinion of the Supreme Court suggests this result; this Court can but only conclude that the Supreme Court has chosen not to deal with this issue at the present time.[5] See, however, Mahler v. Birnbaum, 95 Idaho 14, 501 P.2d 282 (1972).

Nor is this Court willing to adopt the other extreme, holding that the *Argersinger* rule applies to all petty crimes. Reaching that determination may place the courts in the anomolous situation of providing indigents with counsel for petty offenses deemed by non-indigents not worthy of legal assistance. It is possible, of course, to argue that *Argersinger* applies to all misdemeanor charges in which confinement is a possible punishment. While an easily fashioned legal approach, this rule may be impractical. For example, Va.Code, § 46.1–16 states that a violation of any of the provisions of the Virginia Motor Vehicle Title (§§ 46.1–1 through 46.1–347) constitutes a misdemeanor punishable by a jail term up to ten days for the first offense, up to twenty days for a second offense, and up to six months for subsequent offenses. Yet practical experience would doubtlessly prove that Motor Vehicle Law violators rarely go to jail. Since many other petty crimes carry possible jail terms upon conviction, use of a possible confinement standard may in reality be as difficult as applying the *Argersinger* rule to all misdemeanors. In short, the Court concludes that a rigid determination along this line may prove as unworkable and untenable as the rule existing prior to *Argersinger*.

It follows, then, that drawing the line requires a balancing approach. The inherent difficulties with this course have been explored in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), which rejected this method for

5. Were the Court to conclude this interpretation of *Argersinger* correct, Wood's claim would in fact be moot, his not having suffered loss of liberty as a result of the convictions complained of.

appointment of counsel in felony cases as set forth in Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942). Those difficulties do give this Court some pause here.

Nevertheless, the Court finds support for this result in *Argersinger, supra* (concurrences of Chief Justice Burger and Justice Powell) and in Bearden v. South Carolina, 443 F.2d 1090 (4th Cir. 1971).

As the Chief Justice noted in his concurrence to *Argersinger*, trial judges must now, under the *Argersinger* rule, make a "predictive evaluation of each case to determine whether there is a significant likelihood that, if the defendant is convicted, the trial judge will sentence him to a jail term." 407 U.S. at 42, 92 S.Ct. at 2014. This Court concludes that the "predictive evaluation" required under *Argersinger* is essentially a balancing test: a trial judge predeciding whether or not an accused faces a jail term may as easily determine whether the charge is serious enough in effect to warrant assistance of counsel. Accordingly, the Court concludes that the appropriateness of Mr. Justice Powell's solution, hereinafter quoted, within the context of the present status of the *Argersinger* rule, is such as to dispel any hesitance on the part of the Court by reason of the difficulties heretofore referred to.

> I would hold that the right to counsel in petty offense cases is not absolute but is one to be determined by the trial courts exercising a judicial discretion on a case-by-case basis. The

determination should be made before the accused formally pleads; many petty cases are resolved by guilty pleas in which the assistance of counsel may be required. If the trial court should conclude that the assistance of counsel is not required in any case, it should state its reasons so that the issue could be preserved for review. 407 U.S. at 63, 92 S.Ct. at 2025 (footnotes omitted)

The Court finds further support for this result in Bearden v. South Carolina, *supra*, 443 F.2d 1090. In that case, the Fourth Circuit Court of Appeals applied a Betts v. Brady type empirical test to the determination of the necessity of appointed counsel in parole revocation cases, 443 F.2d at 1095, indicating to this Court that the balancing test retains viability in certain instances in the view of its appellate court.

■ Having determined, therefore, that a balancing test is appropriate, it remains to apply same retroactively to the convictions complained of.[6] The difficulty of retroactive application is, of course, that hindsight tells all. If, for example, an accused has been jailed there is no question but that he needed counsel under *Argersinger*; similarly, if an accused was punished by fine of a nominal sum, it would be fair to infer that the trial judge considered the criminal charge relatively minor and would, had he applied a balancing test, not have appointed counsel. If, however, a punishment of serious consequences was imposed, *e.g.*, forfeiture for one year of a driver's license, the Court applying the

---

6. There exists the initial question as to whether Wood's guilty pleas constitute a waiver of his right to counsel and thus his standing to object to lack of counsel here. The Court concludes that the guilty pleas do not waive that right.
The general rule with respect to waiver has been recently stated by the Fourth Circuit Court of Appeals in Parker v. Ross, 470 F.2d 1092 (1972):

> Constitutional violations occurring in the criminal process which do not exert a causative effect upon the decision to enter a guilty plea are swallowed up by

> the plea and insulated from collateral attack.

Lack of counsel here may have contributed to Wood's decision to plead guilty, which, in fact, is a contention argued by him in his pleadings. Ironically, those considerations that militate for Wood's standing to raise that issue in spite of the guilty pleas are the very same which support his right to counsel under a balancing test. Because Wood's claim is "colorable," however, that is sufficient, without prejudging the merits, to overcome the standing problem.

*Argersinger* rule retroactively might, at that stage, be compelled to reconstruct a balancing test as the original trial court would have done. The underlying rationale to the method of analysis is that in clear instances of application, a balancing test is rendered moot by the results of conviction.

 With respect to the charges complained of, the fines were minor and, in fact, nominal. Wood argues that the consequences of these convictions were serious under Va.Code § 19.1–293. That contention, however, is specious. The retroactive application is properly confined to the convictions complained of; consideration of what, in 1953 and 1969, were future violations would constitute a perversion of the process. In short, the Court concludes that these convictions were minor and assistance of counsel unnecessary.

Accordingly, Wood has failed to sustain what in effect is his second contention. The *Argersinger* rule, if applied in his case, would not mandate appointment of counsel. The misdemeanor convictions complained of are valid.

Accordingly, petition having failed to state a claim upon which relief can be granted, the petition shall be dismissed.