Chief Judge Fuld.
The relator is serving a lengthy term in prison following the revocation of his earlier release on parole. He had appeared before the Board of Parole at a revocation hearing without an attorney, and upon this appeal we are called upon to decide whether parolees.are constitutionally entitled, under the Federal and State Constitutions, to the assistance of counsel in parole revocation hearings.
The relator was convicted in 1947 in the former Court of General Sessions on his plea of guilty to a charge of murder in the second degree and sentenced to prison for an indeterminate term of from 20 years to life. After being imprisoned for 16 years, he was released on parole during the summer of 1963. In December of the following year, he was declared ‘‘delinquent ’ ’ and was taken into custody in March of 1965. A month later, he was brought before a ‘ ‘ parole court ’ ’ for a revocation hearing,[1] charged with having violated the conditions of his parole by associating ‘ ‘ with individuals having a criminal record ’ ’ and by giving “false and misleading information” to his parole supervisor.
The relator, not represented by a lawyer, agreed to the board’s characterization of his relationship with certain ex-convicts as ‘‘consorting’’ and admitted that he had falsely denied knowing *379 them.[2] These were, as the respondent notes, ‘ ‘ technical violations ” and, although there is no intimation that the relator had committed a crime or participated in any criminal activity, the board ordered his parole revoked and barred him from being reconsidered for further parole for at least two years. Since that initial hearing, he has appeared before the board on three different occasions, also without counsel, for reconsideration of parole release. In each instance, apparently on the basis of his initial parole violation, reconsideration was denied. He is not scheduled to meet with the board again until June of 1971.
Some time later, in July, 1968, the relator, asserting that he had constitutional rights both to counsel and to certain other procedural safeguards, brought an article 78 proceeding to redress their deprivation. It is enough to say that that proceeding was dismissed on the ground that it had been commenced beyond the time permitted by statute. (See Matter of Menechino v. Division of Parole, 26 N Y 2d 837, affg. 32 A D 2d 761, revg. 57 Misc 2d 865.)[3] In reaching that conclusion, this court noted that “ our determination [was] without prejudice to any other proceeding which [Menechino] may be advised to institute ” (26 N Y 2d, at p. 838). The relator thereupon brought the present habeas corpus proceeding in Dutchess County, again claiming that he was deprived of his due process rights at the parole revocation hearing. Following Special Term’s dismissal of the writ — under constraint of cases decided by the Appellate Division in the Second Department — he appealed directly to our court on constitutional grounds (CPLR 5601, subd. [b], par. 2).[4]
*380 The Correction Law, as it read in 1947 (see supra, p. 378, n. 1), provided that, whenever there is “ reasonable cause to believe ’ ’ that a paroled prisoner has violated his parole, the Board of Parole “ shall declare [him] to be delinquent ” (Correction Law, § 218; now § 212, subd. 7). The board, the statute continued, shall give such parole violator “ an opportunity to appear personally, but not through counsel or others, before [three members of] such board ** * and explain the charges made against him * * * and may, if it sees fit, require [him] to serve out in prison the balance of the maximum term for which he was originally sentenced ’ It is apparent, therefore, that the board is vested with unfettered discretion in deciding whether or not a parole violation has occurred and, if it has, whether or not the parolee should be returned to prison.
The reported decisions as to whether a parolee has a right to counsel at a parole revocation hearing are divided. Although most of the courts which have passed upon the matter have held that there is no such right under the Due Process Clause of the Fifth or Fourteenth Amendment (see, e.g., Earnest v. Willingham, 406 F. 2d 681, 682; Rose v. Haskins, 388 F. 2d 91; Hyser v. Reed, 318 F. 2d 225; Johnson v. Stucker, 203 Kan. 253, cert. den. 396 U. S. 904; Robinson v. Cox, 77 N. M. 55; State ex rel. London v. Pardon and Parole Comm., 2 Ohio St. 2d 224; Beal v. Turner, 22 Utah 2d 418), we prefer the contrary view, expressed by a few courts, as well as by the commentators, that the right to the assistance of an attorney at the hearing is constitutionally mandated. (See People ex rel. Combs v. La Vallee, 29 A D 2d 128 [4th Dept.], app. dsmd. 22 N Y 2d 857; Commonwealth v. Tinson, 433 Pa. 328; Warden v. Palumbo, 214 Md. 407; see, also, Menechino v. Oswald, 430 F. 2d 403, 409; Cohen, Sentencing, Probation and the Rehabilitative Ideal: The View from Mempa v. Rhay, 47 Tex. L. Rev. 1; Note, Constitutional Law; Parole Status and the Privilege Concept, 1969 Duke L. J. 139,142; Note, Parole Revocation in the Federal System, 56 Geo. L. J. 705, 740.)[5]
*381 The United States Supreme Court has not had occasion to consider whether a parolee has a constitutional right to be represented by an attorney at a parole revocation hearing but it has explicitly held that counsel must be afforded a defendant at a proceeding to revoke probation. (See Mempa v. Rhay, 389 U. S. 128; McConnell v. Rhay, 393 U. S. 2.) These cases involved the Washington “ deferred sentencing ” procedure under which persons convicted of crimes could be released on probation either immediately following their convictions or, as in the Mempa case itself, after serving a term of imprisonment. Observing that a proceeding to revoke such probation not only resulted in the imposition of a new penalty but that the determination was ‘‘based on the alleged commission of offenses [i.e., acts in violation of probation] for which the accused is never tried” (Mempa v. Rhay, 389 U. S. 128, 137, supra), the court decided that due process required that ‘ ‘ a lawyer * * * be afforded * * * whether [the proceeding] be labeled a revocation of probation or a deferred sentencing.”
There are, of course, differences between Washington’s deferred sentencing procedure, probation revocation and parole revocation but such differences cannot, and should not, militate against the need for a lawyer where revocation of parole results in the deprivation of liberty. As we read Mempa v. Rhay (389 U. S. 128, supra), we are persuaded—as other courts have been (see, e.g., Hewett v. North Carolina, 415 F. 2d 1316, 1322-1323; Ashworth v. United States, 391 F. 2d 245, 246)—that it may not be limited to its narrow factual content. The principle which underlies the decision in Mempa is sufficiently broad to encompass the revocation of parole as well as of probation. In both, the decision to deprive an individual of his liberty turns on factual determinations, and we would say, as did the Supreme Court in the Mempa case (389 U. S., at p. 135), that “ the necessity for *382 the aid of counsel in marshaling the facts, introducing evidence of mitigating circumstances and in general aiding and assisting the defendant to present his case * * * is apparent.”
Once the Board of Parole decides that a prisoner is to be granted parole, he is released on specific conditions (Correction Law, § 215), and he may not again be incarcerated unless the board concludes, after a hearing, that he has violated his parole in one of the respects enumerated in section 216 of the statute. The purpose of the hearing is to afford the parolee ‘ ‘ an opportunity to appear * * * and explain the charges made against him” (Correction Law, § 218; now § 212, subd. 7). It is, in a very real sense, an accusatory proceeding in which the outcome — liberty or imprisonment — is dependent upon the board’s factual determination as to the truth of specific allegations of misconduct. We agree with the Appellate Division in Combs (29 A D 2d, at p. 131, per Bastow, J.) that, “ [w]hen all the legal niceties are laid aside a proceeding to revoke parole involves the right of an individual to continue at liberty or to be imprisoned. It involves a deprivation of liberty just as much as did the original criminal action and * * * falls within the due process provision of section 6 of article I of our State Constitution.” Indeed, the revocation of Menechino’s parole may actually lead to imprisonment for the rest of his life. Can there be, in such a case, any reasonable doubt as to the value of counsel ‘ ‘ in developing and probing factual and legal situations which may determine on which side of the prison walls appellant will be residing? ” (Commonwealth v. Tinson, 433 Pa. 328, 333, supra.)
In short, to cull from the Supreme Court’s opinion in Powell v. Alabama (287 U. S. 45, 68-69), the right to be heard would be ‘‘of little avail if it did not comprehend the right to be heard by counsel.” (See, also, Goldberg v. Kelly, 397 U. S. 254, 270.)
Certainly, a “ parole court ” or a parole board panel may not be permitted—simply because it is an administrative body rather than a judicial tribunal—to base its determination, having so serious an impact on the lives of the individuals who appear before it, on a possibly mistaken view of the facts owing to the parolee’s inability to make a proper factual presentation. In the present case, for instance, counsel would have been able not only to analyze and question the accuracy of the parole super *383 visor’s report but also would have been available to educe and marshal the facts necessary to refute the technical and rather ambiguous charge of ‘ ‘ consorting.’’
It is for reasons such as these that the Supreme Court, rejecting all efforts to limit the right to counsel to the narrow confines of “ criminal prosecutions ” under the Sixth Amendment, has treated such right as an essential element of due process applicable to all proceedings, whether they be classified as civil, criminal or administrative, where individual liberty is at stake. (See Mempa v. Rhay, 389 U. S. 128, supra; Matter of Gault, 387 U1. S. 1; see, also, Specht v. Patterson, 386 U. S. 605; Hewett v. North Carolina, 415 F. 2d 1316, 1323, supra; United States ex rel. Schuster v. Herold, 410 F. 2d 1071; Shone v. State of Maine, 406 F. 2d 844.) No matter how the proceeding be characterized, the demands of due process, under both the United States Constitution and the Constitution of New York State, require that a parolee be represented by a lawyer, and entitled to introduce testimony, if he so elects. The constitutional guarantee demands no less if the search for truth is not to be sacrificed to administrative speed and convenience. (Cf., e.g., Goldberg v. Kelly, 397 U. S. 254, 266, supra; Escalera v. New York City Housing Auth., 425 F. 2d 853, 867, cert. den. 400 U. S. 853.)
It is difficult, if not impossible, to anticipate all the questions that may arise to confront the Board of Parole and the courts — and we shall not even attempt to address ourselves to them. We prefer to have them answered as they are actually presented on a case-by-case basis. This is in the very nature of the judicial process. It is desirable, however, to indicate that the hearings we are directing must not be permitted to unreasonably delay the proceedings. The presence of an attorney, the receipt of testimony offered by the parolee, are required in order to enable the board to ascertain the facts, pro and con, upon which it is to make its determination. In other words, participation by counsel need be no greater than is required to assure, to the board as well as to the parolee, that the board is accurately informed of the facts before it acts, and the permitted presentation of testimony by the parolee need be no greater than is necessary for that same purpose.
Meeting these requirements will not, we hasten to interpolate, occasion the slightest relaxation of supervisory control over *384 parolees. It is the board alone which is to ascertain the facts and decide their ultimate importance. The presence of counsel is merely designed to afford the prisoner an added measure of protection; the receipt of testimony which he may offer is one of the fundamentals of fair play. Together, these two elements, the presence of counsel and the receipt of evidence, constitute the essential characteristics of our system of administration of justice.
We find completely unpersuasive the contention that, since parole is a mere ‘ ‘ privilege, ’ ’ a matter of grace, and not a “ right,” various constitutional guarantees, including the right to counsel, may properly be denied at a revocation hearing.
“ Even if a distinction exists between the components of the right-privilege dichotomy, ’ ’ one Federal Court of Appeals observed in a case involving the revocation of probation (Hewett v. North Carolina, 415 F. 2d 1316, 1322-1323, supra), “ when a state undertakes to institute proceedings for the disposition of those accused of crime it must do so consistently with constitutional privileges, even though the actual institution of the procedure was not constitutionally required.” (See, also, Goldberg v. Kelly, 397 U. S. 254, 262-263, supra; Escalera v. New York City Housing Auth., 425 F. 2d 853, 861, supra; Note, Constitutional Law; Parole Status and the Privilege Concept, 1969 Duke L. J. 139, 142; Cohen, Sentencing, Probation and the Rehabilitative Ideal: The View from Mempa v. Rhay, 47 Tex. L. Rev. 1; Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv. L. Rev. 1439, 1451.)[6]
Nor is there any support for the contention that the appearance of counsel or the calling of witnesses would work to the detriment of the board or the parolee. There is no evidence to *385 indicate any adverse effect upon the parole systems of those jurisdictions which have, by legislation or by force of constitutional provision, required the presence of a lawyer. (See Sklar, Probation and Parole Revocation Hearings, 55 J. Crim. L., Crim. & P. S. 175, 181-182; Kadish, The Advocate and the Expert-Counsel in the Peno-Correctional Process, 45 Minn. L. Rev. 803, 837-838.)[7]
The relator did not request the assistance of a lawyer at his hearing but that omission did not constitute a waiver of his right to counsel—and, indeed, no such point is asserted. It is quite true that, as a general rule, the failure to object at a trial or hearing effects a waiver and prevents a party from urging the matter on appeal but that rule cannot, in the very nature of things, apply in a case such as this. If the relator had a constitutional right to be represented, he should have been advised of that right. In the absence of competent legal assistance, he may not be precluded from arguing that he is entitled to a lawyer because he did not know enough to ask for one. Simply stated, he may not be deemed to have made a knowing or informed waiver of his right to counsel. (See, e.g., Johnson v. Zerbst, 304 U. S. 458, 464-466; People v. Malloy, 22 N Y 2d 559, 566-567.)[8]
In bringing this opinion to a close, we note our agreement with the observation, frequently made, that the parole system is an enlightened effort on the part of society to rehabilitate con *386 victed criminals. Although few circumstances could better further that purpose than a belief on the part of such offenders in a fair and objective parole procedure, hardly anything could more seriously impede progress toward that important goal than a belief on their part that the law’s machinery is arbitrary, too busy or impervious to the facts. The desired end can become a reality only by requiring obedience to the demands of due process and granting parolees a hearing at which they will be represented by counsel.
The judgment appealed from should be reversed, without costs, and the matter remitted to the Board of Parole for the purpose of conducting a hearing at which the relator shall be entitled to the assistance of counsel and permitted to call witnesses.

. Section 218 of the Correction Law at the time provided that, when a parolee is returned to custody for violating his parole, the Parole Board “ shall, as soon as practicable, hold a parole court at such prison or institution ”. The section was later amended to delete the reference to a “parole court”, substituting therefor a panel of “three members ” (L. 1968, ch. 203) but no change was made in the nature of the proceeding. Although section 218 was repealed in 1970 (L. 1970, ch. 476, § 44), the repealing statute declared that the provisions of the section “ shall continue to apply in eases where the sentence involved is for an offense committed” before September 1, 1967. Another section — numbered 212 — replaces section 218 for prisoners sentenced after that date.

. The record before the board did not disclose that the relator’s only relationship with the ex-convicts in question was, assertedly, through his job where they were fellow construction workers and that one of the men had allegedly been instrumental in obtaining the job for him.

. The court at Special Term had decided in the relator’s favor, directing the Parole Board to hold a new hearing at which he was to be apprised of the accusations against him, of his right to examine witnesses against him and of his right to be represented by counsel. (Matter of Menechino v. Division of Parole, 57 Misc 2d 865, 870, supra.)

. The relator also instituted — in August of 1969 — an action in the Federal District Court, asserting that he was entitled to notice of the charges against him, confrontation of witnesses and assistance of counsel at his next parole release hearing before the Parole Board. Although his application was denied, the United States Court of Appeals for the Second Circuit, in affirming the judgment before it, wrote that, had parole revocation been at issue rather than *380 parole release, “fundamental fairness [might] dictate * * * that the prisoner be accorded constitutional due process at a trial-type hearing, including the right to legal counsel”. (Menechino v. Oswald, 430 F. 2d 403, 409.)

. The Combs case (29 A D 2d 128, supra), decided by the Appellate Division for the Fourth Department, found it unnecessary to invoke the Due Process *381 Clause of the Fourteenth Amendment, holding that a parolee is entitled to an attorney under the provisions of section 6 of article I of the New York State Constitution “ pertaining to the right to counsel and its guarantee of due process ” (p. 130) —and we note our agreement with this view. The Appellate Divisions for the other Departments have, however, reached a contrary conclusion. (See Matter of Menechino v. Division of Parole, 32 A D 2d 761 [1st Dept.], affd. on other grounds 26 N Y 2d 837, supra; People ex rel. Smith v. Deegan, 32 A D 2d 940 [2d Dept.]; People ex rel. Ochs v. La Vallee, 33 A D 2d 80 [3d Dept.], app. dsmd. 26 N Y 2d 697.)

. In view of the court’s decision in Mempa v. Rhay (389 U. S. 128, supra), we doubt the continued viability of the right-privilege distinction reflected in Escoe v. Zerbst (295 U. S. 490, 492-493), upon which the respondent places reliance. Although it may well be argued that Mempa has overruled Escoe, we find it necessary merely to point out that the Supreme Court not only did not mention that decision in its opinion in Mempa but has consistently held in recent years that substantial interests, even though denominated “privileges,” may not be taken from an individual by government action in disregard of fundamental constitutional rights. (See, e.g., Cafeteria Workers v. McElroy, 367 U. S. 886, 894; Speiser v. Randall, 357 U. S. 513, 518; Wieman v. Updegraff, 344 U. S. 183, 191-192.)

. The following are some of the jurisdictions in which the defendant is entitled to counsel: Alabama (Ala. Code, tit. 42, § 12); Delaware (Del. Code Ann., tit. 11, § 4352, subd. [d]); District of Columbia (D. C. Code, § 24-206); Florida (Fla. Stats. Ann., § 947.23, subd. [1] [1963 Supp.]); Maryland (Warden v. Palumbo, 214 Md. 407, supra); Michigan (Mich. Stats. Ann., § 28.2310, subd. [1]); Montana (Mont. Rev. Code, §§ 94-9838, 94-9835 [1963 Supp.]); Pennsylvania (Commonwealth v. Tinson, 433 Pa. 328, supra).
It is of more than passing significance that the Model Penal Code provides that the parolee shall, in preparing for a parole revocation hearing, “be permitted to advise with his own legal counsel ” and at the hearing “may admit, deny, or explain the violation charged, and * * * present proof, including affidavits and other evidence, in support of his contention ” (Model Penal Code, Proposed Official Draft [1962], § 305.15).

. It is to be noted that, in Mempa v. Rhay (389 U. S. 128, 131, supra), the petitioner’s failure to request a lawyer at the hearing was not regarded as a waiver of his right to be represented by counsel at that hearing. (See, also, Walkling v. Washington Bd. of Prison Terms [decided with Mempa], 389 U. S., at p. 132.)