Jones, J. (dissenting).
In my view the decision of the majority falls short of the requirements of this case. I would recognize the right of indigent individuals to the assistance of counsel in litigation seeking the dissolution of a marriage. I would conclude further, however, that we are not required on the record now before us to determine how such assistance shall be assured and that it would be inappropriate for us to do so at this time.
The Supreme Court of the United States, in Boddie v Connecticut (401 US 371, 374) held: "that, given the basic position of the marriage relationship in this society’s hierarchy of values and the concomitant state monopolization of the means for legally dissolving this relationship, due process does prohibit a State from denying, solely because of inability to pay, access to its courts to individuals who seek judicial dissolution of their marriages.” In Deason v Deason (32 NY2d 93) we joined in recognition of this fundamental principle. I can only interpret the position taken by the majority today as a significañt and in my opinion an impermissible retreat from that position.
In Boddie, the particular barrier to access to the judicial process was the requirement of the payment of "fees and costs”, including a filing fee and a fee for service of process by the Sheriff; in Deason it was payment of the cost of publication of process to acquire jurisdiction. I find nothing in either case to warrant any conclusion that it is only certain barriers that are to be eliminated or that hindrance to the availability of the judicial process is to be eliminated only if to do so will entail an economic burden of modest dimension—i.e., that the results in these two cases are to be explained by the character of the particular obstacles there encountered or by the circumstance that the State may itself waive collection of the fees and costs in the one case and that inexpensive alternative means of service of process can be made available in the other. I read these decisions rather as confirming the right of individuals to the availability of judicial procedures for the dissolution of a marriage and as determining that such availability shall not be denied because of the circumstance of *443 indigency. To that extent the decisions are unqualified in their enunciation of fundamental principle.
In my analysis two important subsidiary issues then remain for resolution in each case in which it is sought to apply the principle. The first is to determine whether there is a barrier to the availability of the judicial process, and the second is to decide how such barrier, if any, shall be overcome for the particular litigant or prospective litigant. Boddie held that payment of fees and costs was such a barrier, but the Supreme Court in that case was not called on to determine how the obstacle was to be removed, only that it had to be removed. In Deason we held that cost of publication of process was such a barrier and went on to hold that that particular barrier should be scaled for the indigent by the payment of such cost by the county.
We are called on in the present cases, then, in my view, to determine whether access to our courts is effectively denied unless representation by counsel is assured, and, if so, how that representation shall be assured.
Due process requires at a minimum that "persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard”. (Boddie v Connecticut, supra, p 377.) I can find no justification for departing, in the context of the present matrimonial litigation, from the position to which we have elsewhere consistently and wisely adhered—that a "meaningful opportunity to be heard” can be realized only with the assistance of counsel. (Matter of Ella B., 30 NY2d 352; People ex rel. Rogers v Stanley, 17 NY2d 256; and see for decisions in criminal matters the authorities cited in the majority opinion.) Respondent does not challenge this view and it was clearly recognized at the Appellate Division in the present cases (45 AD2d 785). Our lower courts have recognized its validity (Matter of Bartlett v Kitchin, 76 Misc 2d 1087; Vanderpool v Vanderpool, 74 Misc 2d 122). To my mind it is both artificial and constitutionally impermissible to say that the State may not deny "access” (taking the narrow denotation of the word as "liberty to approach”), but, entrance having been permitted, the State may then deny effective presence and participation. At the very heart of our recognition of the right to counsel elsewhere has been our articulated conviction that "the right to be heard would be 'of little avail if it did not comprehend the right to *444 be heard by counsel’ ” (People ex rel. Menechino v Warden, 27 NY2d 376, 382).
The much more difficult question is how counsel shall be made available in matrimonial litigation to indigents in general and to the indigent parties in these cases in particular (cf. Bartlett v Kitchin, supra, and Vanderpool v Vanderpool, supra). On this branch of the present appeal I conclude that the order of the Appellate Division should be modified in one detail and, as so modified, be affirmed.
As stated, in my view indigents are entitled to be represented by counsel in litigation seeking the dissolution of a marriage.[1] Counsel may be provided in a variety of ways. The services of Legal Aid counsel or of counsel under other private or governmentally financed auspices may be available. The court may assign counsel.[2] The local Bar Association in the discharge of its traditional professional responsibility may be able to make arrangements for such representation. Legislative authorization could be given the county to assure the availability of legal services under various options (cf. County Law, art 18-B). Specific authorization could be given for the expenditure of county moneys. Provision could even be made for appropriate supplementation of welfare grants to cover necessary expenditures for the required legal services, as is now the case for necessary medical services.
While in my view, it is the responsibility of the judiciary to declare the right to counsel, and perhaps in an ultimate, final sense to lend judicially available sanction to the enforcement of such right, the determination of how the required legal services shall be made available (and here I agree with the majority) is one much more appropriately to be addressed and to be resolved by the Legislature. Not only is the Legislature better fitted and more competent to determine the means *445 which shall be mandated, and perhaps the order of recourse to several alternatives; it is also the proper source of authorization for expenditure of funds if that be necessary and for determination as to the division of financial responsibility between local and State fiscal resources.
There is another important aspect which makes legislative consideration desirable. As stated, the fact that the economic impact of the provision of legal services may be significantly greater than in the instance of fees and costs and expenses of publication does not dilute the right to representation by counsel. That fact may nonetheless call for more careful consideration and definition of the level of indigency to be recognized and of the standards of proof required to establish entitlement. As in Boddie and Deason, so here, the cases reached the appellate courts with the fact of prerequisite indigency conceded or otherwise established on the record. As to this aspect of the matter, too, the Legislature has greater capacity both to make substantive determinations and to prescribe implementing procedures.
Careful legislative deliberation, including the benefit of focused factual investigation and of public hearings, may unveil other relevant factors. At least a sounder predicate can be developed for the concededly difficult determinations to be made.
Thus, as to implementation in general of the declared right to counsel, in my view our court should now exercise responsible judicial restraint, inviting the most careful and prompt consideration of the subject by our Legislature.
As to the proper disposition of the cases now before us, I would modify the order at the Appellate Division to the extent that the reversal of the order of Special Term should be without prejudice to a further application to that court for provision of counsel, by assignment or otherwise. I note that while various assertions are made in the briefs and on oral argument, there has been no finding by Special Term that legal representation cannot be arranged for these applicants by some means other than by provision by or at the expense of Tompkins County. It seems apparent that any such ultimate conclusion could only be predicated on detailed consideration and recital of the attempts made otherwise to provide counsel and of the reasons which compelled the conclusion that provision of legal services by the county would be the only alternative. I do not find that the present record contains *446 the necessary predicate for the direction made by Special Term in these cases or for appellate affirmance thereof.

.1 would distinguish between the right of indigents to be represented by counsel in litigation seeking the dissolution of a marriage and other types of litigation. In the former, in the language of Boddie, there is a "state monopolization of the means for dissolving [the marriage] relationship” (401 US, at p 374). In other instances recourse to judicial machinery for dispute settlement, while perhaps useful and desirable, is not mandated by the State.

. I agree on this point with the view of the majority, and thus disagree with the position expressed in the opinion at the Appellate Division "that an indigent party to a matrimonial action is entitled to assigned counsel.” (45 AD2d 785.) (Emphasis added.) Under CPLR 1102 the court may assign counsel. Such authority historically and by express provision rests in the discretion of the court, however; the exercise of such discretion in favor of the appointment of assigned counsel is not mandatory.