Odebee ANDERSON, Plaintiff,

v.

The NEW YORK STATE DIVISION OF PAROLE, an entity created by and under the laws of the State of New York, Edward Hammock, Chairperson, New York State Division of Parole, Jerome Cutler, Parole Officer, New York State Division of Parole, Matthew Mazzamurro, Parole Officer, New York State Division of Parole, G.T. Giacopello, Hearing Officer, New York State Division of Parole, Patrick Mullen, Hearing Officer, New York State Division of Parole, Richard A. Fowler, Hearing Officer, New York State Division of Parole, Joseph Viola, Hearing Officer, New York State Division of Parole, Robert Abrams, Attorney General, State of New York, Defendants.

No. 81 Civ. 1812(WK).

United States District Court,
S. D. New York.

Sept. 8, 1982.

**5.** The Court therefore does not decide whether the D.C. long-arm statute authorized service on the defendants.

Myron Beldock, James I. Meyerson, New York City, for plaintiff.

Robert Abrams, Atty. Gen., State of N.Y. by Susan L. Yarbrough, Deputy Atty. Gen., New York City, for defendants.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Plaintiff Odebee Anderson was conditionally released from confinement in the New York State Correctional System on October 13, 1978.[1] By spring the next year, he was living at the home of a Mrs. Grace Tucker. On July 1, 1979, he was arrested for violating the terms of his release. The gist of the alleged violation was that on June 22 he had assaulted Mrs. Tucker's 15-year-old son, William, with a knife; and that he failed to

---

1. Plaintiff had been incarcerated pursuant to a 1969 conviction for assault and possession of a weapon, for which he had been sentenced to concurrent terms of zero to fifteen and zero to four years in prison.

tell his parole officer that the police had questioned him concerning this incident.[2]

Preliminary and final revocation hearings were held, and plaintiff's parole was revoked. His administrative appeal of the revocation was denied. At none of these proceedings was plaintiff represented by counsel.

In July 1980, plaintiff—for the first time represented by counsel—petitioned the New York Supreme Court, Clinton County, for a writ of habeas corpus. By order dated October 11, 1980, that Court (Ford, J.) found that the failure to provide plaintiff with counsel at his revocation hearings had violated his due process rights. It accordingly annulled the determination revoking plaintiff's parole, and directed the Division of Parole promptly to conduct a *de novo* revocation hearing, at which plaintiff was to be provided with counsel. When no *de novo* hearing was held, the Court on December 8, 1980 ordered plaintiff's immediate release from confinement and directed reinstatement of his conditional release status. In so doing, the Court held that the evidence adduced at plaintiff's revocation hearing was insufficient to support the revocation *ab initio,* and that plaintiff's continued restraint was accordingly illegal. Plaintiff was at liberty when this action was commenced.

It is plaintiff's claim that the failure to provide him with counsel at his revocation hearings, and the failure to accord him a prompt *de novo* hearing in compliance with the order of the Clinton County Supreme Court, violated his rights under both federal and state law, as—on the evidence presented—did actual revocation of his parole. He brings this civil action against the New York State Division of Parole; its Chairperson Edward Hammock; parole officer Jerome Cutler, who presented the charges against him at the preliminary revocation hearing; parole officer Matthew Mazzamurro who performed the same function at

the final revocation hearing; parole hearing officers G.T. Giacopello, Patrick Mullen, Richard A. Fowler, and Joseph Viola, who presided over various portions of the revocation proceedings; and Robert Abrams, Attorney General of the State of New York.

All defendants move to dismiss the Complaint. Matter outside the pleadings having been presented, we treat this as a motion for summary judgment. For reasons set forth below, we grant the motion as to defendants New York State Division of Parole and Robert Abrams. As to defendants Hammock, Giacopello, Mullen, Fowler, Viola, Cutler and Mazzamurro, the motion is granted as to the third, fourth and fifth claims of the Complaint, and otherwise denied.

### The Complaint

The verified Complaint seeks declaratory relief as well as compensatory and punitive damages totaling $700,000. There are seven claims. The first deals with plaintiff's preliminary revocation hearing and concerns actions by the participants which allegedly deprived plaintiff of his right to counsel under the due process clauses of the New York State and United States Constitutions, and of correlative rights under procedural rules of the New York State Division of Parole. It contains specific allegations referable to defendants Cutler, Giacopello and Fowler. The second claim makes similar allegations as to plaintiff's final revocation hearing. The third, fourth and fifth claims concern the alleged failure of those involved in plaintiff's final revocation hearing and, apparently, his subsequent appeal, to conduct the proceedings and make their findings in accordance with the evidentiary standards set forth in New York State regulations governing revocation of parole. These claims—the second through fifth—make factual allegations referable to

---

**2.** The notice of violation listed four charges: failure to lead a law-abiding life; menacing the safety of another; possession of a weapon; and failure to inform his parole officer that he had been questioned by the police on June 23, 1979.

The first three charges all stemmed from the alleged assault on Mrs. Tucker's son. The unreported questioning similarly related to that incident.

defendants Mazzamurro, Viola and Mullen. Insofar as the first five claims allege inadequacies in the standard forms of notice provided prior to plaintiff's preliminary and final hearings, and in the Division's failure to grant plaintiff's administrative appeal, they may also be seen as making specific allegations referable to the Division of Parole.

The sixth and seventh claims concern the failure to comply with the Clinton County Supreme Court's October 11, 1980 order that plaintiff be afforded a prompt *de novo* revocation hearing with counsel. The sixth claim relates solely to the Division; the seventh to defendant Robert Abrams.

As to defendant Abrams, the Complaint states that his failure, and the failure of his employees, to assure plaintiff an immediate parole revocation hearing following annulment of the initial revocation was arbitrary and capricious and in knowing and conscious violation of plaintiff's rights. The Complaint further states (at ¶ 11):

> "DEFENDANT ROBERT ABRAMS...is responsible for assuring that the State of New York, its employees and agents, in their official capacities, carry out the laws of the State of New York, as interpreted by the Courts of the State of New York and of the United States of America. *More particularly, the Attorney General* of the State of New York *is responsible for assuring that the orders and mandates of the courts of the State of New York, deriving from habeas corpus efforts, are faithfully, fully and expeditiously carried out...*" (Emphasis supplied.)

As to defendant Edward Hammock, the Complaint merely states (at ¶ 8):

> "DEFENDANT EDWARD HAMMOCK is the Chairperson of the New York State Division of Parole. In his capacity as Chairperson of said Board he is responsible for assuring that the duties and functions of the New York State Division of Parole are carried out in conformity with the laws and Constitution of the State of New York and consistent

with guarantees encompassed within the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution."

### *Background*

#### *The Hearings*

Prior to the preliminary revocation hearing, plaintiff received a standard form notice advising him, among other things, that he had "the right to appear at that hearing with counsel or to request the assistance of counsel at that hearing and to speak on [his] own behalf." (Plaintiff's Exhibit C–iii) Although he repeatedly stated throughout the revocation proceedings that he wished to be represented by counsel, at no time was counsel provided. Indeed, plaintiff was never specifically advised that he had a right to counsel appointed by the court. Instead, he was told he could have counsel if he wished, but that he had to secure it himself. Moreover, it was not until he received the standard form notice of the final revocation hearing—scheduled for September 14, 1979—that plaintiff was given correct advice as to how to go about securing counsel. (*See, e.g.,* Complaint ¶¶ 32, 148–150; Plaintiff's Exhibit C–iii; Plaintiff's Exhibit C–iv at 7–8) [3] That notice stated in pertinent part:

> "At this hearing you have a right to representation by counsel. You must, however, obtain a lawyer through your own efforts. The Division of Parole cannot provide you with legal representation. If you cannot afford an attorney, you may apply to the court in the county in which you are confined or, if your underlying conviction arose in New York City, to the Legal Aid Society, Parole Revocation Defense Unit, 15 Park Row, New York, N.Y. 10038, Telephone: (212) 577–3500."

Plaintiff wrote as suggested to the New York Supreme Court in White Plains, requesting counsel for his final revocation hearing. (Complaint ¶ 46) However on the date of hearing—having as yet received no

---

**3.** We accept as true, for purposes of this motion, the allegations of the verified Complaint.

reply, and having already spent two and one-half months in jail awaiting resolution of the charges against him—he reluctantly agreed to go forward without counsel. (Complaint ¶ 51)

The record is less than clear as to plaintiff's ability fully to comprehend the significance of the proceedings. His education is apparently limited—he reads and writes little, if at all, and it was his parole officer's belief that he might be "incapable of understanding the ramifications of all this." (Plaintiff's Exhibit C–v at 6–7)

So far as the merits of the case against plaintiff are concerned, it was hardly water tight. Mrs. Tucker having been asleep throughout plaintiff's alleged controversy with her 15-year old son William, the only evidence properly admissible against plaintiff on the knifing count was the testimony of the boy. William testified, in essence, that plaintiff had attacked him with a knife while in an intoxicated condition, and that he had had to defend himself with a hammer.

Plaintiff denied the entire incident. He testified that William had recently been released from a mental institution—a proposition which garners inferential support from Mrs. Tucker's assertion at the final revocation hearing that she should speak for her son because "he gets confused sometimes." (Plaintiff's Exhibit C–vii at 17) He further testified that he had recently broken off a relationship with Mrs. Tucker; that he had told her on the day in question that he was going to move out of her house, and that this had angered her; but that it had been too late to leave at that point. He offered into evidence a letter from Mrs. Tucker indicating that she was still romantically interested in him.

The relevant police records, moreover, did not support William's claims. Although the police came to Mrs. Tucker's home in response to her call, there was nothing to indicate that they found plaintiff intoxicated; they found no knife; and they did not arrest him. It was plaintiff's testimony that they merely told him to leave and suggested he return the next day to pick up his clothes and belongings, which he did.

As to the charge that he failed to tell his parole officer he had been questioned by the police, plaintiff conceded that he had not immediately done so, but stated that he had planned to mention it at their next scheduled meeting on July 17, 1979.

The hearing officers neither asked Mrs. Tucker about her relationship with plaintiff nor inquired into William's mental condition. The last such officer—defendant Mullen—found against plaintiff on the knifing count on the ground that the Tuckers' testimony was in all respects credible, and that plaintiff's denials were not. As to the failure to report, he concluded that plaintiff's failure immediately to advise his parole officer of his contact with the police sufficed to establish the violation charged.

*The Habeas*

Justice Ford's order of October 11, 1980 annulling the revocation of plaintiff's parole, and directing the Division of Parole to conduct a prompt *de novo* revocation hearing with counsel was personally served on an Assistant Attorney General of the State of New York (attorney on the habeas for the New York State Division of Parole and for its Chairperson, Edward Hammock), and was served by mail on October 17, 1980 on the Senior Attorney for the Division of Parole. The Board of Parole subsequently convened twice at the facility where plaintiff was being held, once on October 28, 1980, and again on November 11, 1980. Although plaintiff appeared before the Board on the first of these occasions for a previously scheduled release consideration, the Division took no action on either occasion with respect to the Court-ordered revocation hearing. In response to inquiry by plaintiff's counsel on November 11, 1980, an employee of the Division at the facility indicated that they had not yet received from the Senior Attorney a copy of the Court's October 11, 1980 order, and that they did not know what was required for plaintiff's *de novo* hearing. (Complaint ¶¶ 117, 121)

*Discussion*

As amplified at oral argument and thereafter, defendants' contentions on this mo-

tion are: first, that the complaint fails to state a claim based on deprivation of plaintiff's right to counsel; and second, that each of the defendants is in any event entitled to dismissal of the action as against him or it—Edward Hammock because of his lack of personal involvement; Robert Abrams on similar grounds, on the ground that he possessed neither a duty nor the power to compel compliance with the order of the Clinton County Supreme Court, and on the further ground that if he did he is nevertheless immune from suit for damages in this connection; the other individual defendants by virtue of the immunity from liability discussed by the Supreme Court in *Butz v. Economou* (1978) 438 U.S. 478, 508–514, 98 S.Ct. 2894, 2911–14, 57 L.Ed.2d 895; and the New York State Division of Parole under the doctrine of sovereign immunity.

*Deprivation of Rights*

[1, 2] It seems to us self-evident that failure to comply with the October 11, 1980 order of the Clinton County Supreme Court presents a question of fact as to whether plaintiff was deprived of his liberty without due process of law.[4] We conclude, moreover, as a matter of law, that plaintiff was deprived of the right to counsel assured him by the federal and state constitutions under the doctrine enunciated in *Gagnon v. Scarpelli* (1973) 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656, as foreshadowed by *Morrissey v. Brewer* (1972) 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484, and *People ex rel. Menechino v. Warden* (1971) 27 N.Y.2d 376, 318 N.Y.S.2d 449, 267 N.E.2d 238, as modified and amplified by *People ex rel. Calloway v. Skinner* (1973) 33 N.Y.2d 23, 347 N.Y.S.2d 178, 300 N.E.2d 716, and by procedures promulgated by the Division of Parole.

In *Morrissey,* the Supreme Court held that a parolee confronted with revocation of his parole was entitled under the due process clause of the Fourteenth Amendment to certain minimal protections. These included a prompt preliminary hearing to determine whether there was reasonable ground to believe he had committed a violation, followed reasonably quickly by a final revocation hearing at which he was to be provided with written notice of the claimed violations, disclosure of the evidence against him, the opportunity to be heard in person and to present witnesses and documentary evidence, the right to confront and cross-examine most witnesses, a neutral and detached hearing body, and a written statement as to the evidence relied on and the reasons for revoking his parole. 408 U.S. at 484–89, 92 S.Ct. at 2601–04.

In *Gagnon,* the Court directly addressed the extent of an indigent parolee's due process right to counsel during such proceedings.[5] It specifically rejected the contention that *Morrissey* established the outer reach of the due process clause with respect to revocation proceedings, and that therefore counsel need never be supplied. The Court thus observed (411 U.S. at 786–87, 93 S.Ct. at 2962):

> "What this argument overlooks is that the effectiveness of the rights guaranteed by *Morrissey* may in some circumstances depend on the use of skills which the probationer or parolee is unlikely to possess. Despite the informal nature of the proceedings and the absence of technical rules of procedure or evidence, the unskilled or uneducated probationer or parolee may well have difficulty in presenting his version of a disputed set of facts where the presentation requires the examining or cross-examining of witnesses or the offering or dissecting of complex documentary evidence."

It concluded instead that there would remain "certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its

---

4. We cannot on the record before us determine whether defendants' behavior in fact amounted to violation of that order, or whether plaintiff waived such violation, if it occurred. *Compare* ¶¶ 109–121 of the Complaint with Exhibit A to the Affidavit of Susan Yarborough submitted by defendants in support of this motion.

5. Although *Gagnon* dealt with revocation of probation rather than parole, the Court stated that for purposes of the due process clause, there was no difference between the two. 411 U.S. at 782, 93 S.Ct. at 1759.

expense counsel for indigent probationers or parolees," and held that the determination as to whether counsel was or was not required must be made "on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system." 411 U.S. at 790, 93 S.Ct. at 1763. It set forth the following guidelines to aid in the exercise of such discretion (at 790–91, 93 S.Ct. at 1764):

"Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself. In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record."

In *Calloway,* the New York Court of Appeals reaffirmed its own holding in *Menechino* (which pre-dated *Gagnon* ) that a parolee has an absolute right under the due process clause of the New York State Constitution to the assistance of counsel at his final revocation hearing. It held, however, that as to the preliminary hearing—which "anticipates only a 'minimal inquiry' as to the alleged violation and does not require a final resolution of charges or factual issues"

—the parolee's right to counsel under the State Constitution was co-extensive with that provided under the Federal Constitution as described in *Gagnon.* 33 N.Y.2d at 31–32, 347 N.Y.S.2d at 182, 300 N.E.2d 720.

With respect to the procedures of the Division of Parole, a memorandum issued on July 1, 1978 to all parole officers by the Director of Parole Field Operations states in pertinent part that the parole officer assigned to an alleged violator should advise him that he is not entitled to assigned counsel at the preliminary hearing, but that counsel will be permitted if he obtains it himself, and further, of specific places where such counsel might be obtained; that the officer presiding at the preliminary hearing may grant only one adjournment to permit the alleged violator to secure counsel, and that the parolee should be advised of this fact; and finally, that the notice of a final revocation hearing should alert the parolee to his right to counsel, and contain information "relative to the procedures concerning assignment of counsel under Section 18(b) of the County Law." (Plaintiff's Exhibit C–ix at 7–9, 17)[6]

It is immediately apparent that—even where consistent with procedures promulgated by the Division of Parole—the response to plaintiff's repeated requests for counsel failed to meet the requirements enunciated in *Gagnon,* let alone the more stringent requirements of *Menechino* and *Calloway. Gagnon* explicitly places on the state authority charged with administering the system of parole—here defendant Division of Parole—the responsibility for determining whether counsel must be afforded at a given revocation hearing, be it preliminary or final; and of stating the reasons for any denials of counsel. At no time, however, did the Division or any of its employees even purport to exercise such responsibility.[7]

---

6. *See also* 9 N.Y. C.R.R. § 8005.3(c)(1) (the notice of violation shall state that at the preliminary hearing the alleged violator "has the right to appear and speak on his own behalf and that he will be allowed to appear with counsel, which it is his duty to obtain"), 9 N.Y. C.R.R.

§ 8005.16(a) ("An alleged violator is entitled to representation by an attorney at a final revocation hearing").

7. Had they done so, moreover, they would seemingly have been compelled to conclude— at the very least—that plaintiff was entitled to

Moreover, it clearly was insufficient under *Gagnon* for the Division to tell plaintiff that he was entitled to counsel at his revocation hearing, but that he should secure it on his own. In light of the *Gagnon* Court's motivating concern for the ignorant parolee, we conclude (as did Justice Ford, see Plaintiff's Exhibit C–ix at 7–9, 17) that the Division is also required under *Gagnon* to itself ensure that eligible parolees are in fact provided with counsel.

In sum, we find that—by error or indifference—plaintiff was deprived of his due process rights. The question thus presented is whether any of the named defendants is subject to liability in this action.

*Defendants' Liability*

■ So far as defendant Division of Parole is concerned, we conclude that plaintiff may not recover against it in this action. The Eleventh Amendment bars federal courts from entertaining suits by private parties against states or their agencies, absent consent by the state. *Alabama v. Pugh* (1978) 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 114; *Edelman v. Jordan* (1974) 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662. The State of New York, however, has consented that suits for money damages be brought against it (or its agencies) only in the New York Court of Claims. *Samuel Adler, Inc. v. Noyes* (1941) 285 N.Y. 34, 35, 32 N.E.2d 781.

■ Nor can plaintiff here recover from defendant Abrams. Although "[i]t is indeed the duty of the Attorney General to 'prosecute and defend all actions and proceedings in which the state is interested,'" *Merrick v. Merrick* (S.D.N.Y. 1977) 441 F.Supp. 143, 146, quoting N.Y. Exec. Law § 63(1), plaintiff has cited no authority—nor have we found any—for the lynchpin of his claim: that the Attorney General is, in addition, responsible for assuring that mandates of the New York courts deriving from habeas corpus efforts are faithfully and expeditiously carried out. (Complaint ¶ 11) This claim seems to us to misconceive the function of the Attorney General's office. In the instant case, that office functioned merely as counsel to the Division of Parole; and it was the Division, not its counsel, which was subject to the October 11, 1980 order mandating a prompt *de novo* hearing. There being no doubt but that the Division was aware of its obligations under that order, we can conceive of no basis for holding the Attorney General's office—let alone the Attorney General himself—liable for the Division's alleged failure to comply.

■ Defendant Hammock, Chairperson of the Division of Parole, contends that—as the doctrine of *respondeat superior* does not apply to actions under 42 U.S.C. § 1983,

counsel at his final revocation hearing. Not only did plaintiff claim that he had not committed the knifing (the only serious offense charged), but his ability competently to defend himself was clearly in doubt. His education was at best limited, and his parole officer had stated that he was probably unable to understand the ramifications of the proceedings. The charges against him were nevertheless sustained on the uncorroborated testimony of the 15-year-old son of his former lover—a boy, moreover, who (if we accept, as we must for purposes of this motion, plaintiff's sworn statement at the final revocation hearing) had recently been released from a mental institution. We conclude that this is precisely the sort of case to which the Supreme Court referred when it observed that the effectiveness of the rights guaranteed by *Morrissey* may in some circumstances depend on the skills of cross-examination which an uneducated parolee is unlikely to possess. *Gagnon, supra,* 411 U.S. at 786–87, 93 S.Ct. at 1761–62.

It is a closer question whether—had the Division exercised its responsibility to consider the matter—it need have found plaintiff entitled to assistance of counsel at the preliminary hearing. As the Court in *Calloway* observed, this hearing anticipates only a " 'minimal inquiry' ", 33 N.Y.2d 31, 347 N.Y.S.2d 182, 300 N.E.2d 720, and the testimony of William Tucker would probably have sufficed to establish probable cause that a violation had been committed. There is nevertheless no doubt but that the assistance of trained counsel might have stopped the proceeding at this point, and it is our belief that under the guidelines set forth in *Gagnon,* counsel should have been afforded. We note, moreover, that with respect to this hearing, the Division failed to comply with its own requirement that an alleged violator be provided with specific information as to where counsel might be obtained.

*Procunier v. Navarette* (1978) 434 U.S. 555, 560–566, 98 S.Ct. 855, 859–62, 55 L.Ed.2d 24; *Rizzo v. Goode* (1976) 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561, and as the Complaint makes no specific allegations showing personal involvement by him in the conduct allegedly depriving plaintiff of his rights— the action must similarly be dismissed as to him. While we do not quarrel with defendant Hammock's statement of the law or with his reading of the Complaint as now written, we nevertheless conclude that plaintiff is at the very least entitled to discovery prior to dismissal of the action as to him.[8]

It is apparent, from reviewing the transcripts of plaintiff's revocation hearings in light of Division regulations, procedures and forms, that much of the conduct of which plaintiff complains was in accord with what was—not *a priori* unreasonably—perceived by the participants to be Division policy. It is in particular quite clear that these defendants did not see themselves as obligated either to determine when the due process clause required counsel to be appointed for an indigent parolee, or to ensure in such cases that counsel was in fact secured. Plaintiff having properly alleged that defendant Hammock—as head of the Division—was responsible for seeing to it that its duties were performed in accordance with federal and state law, *see* 9 N.Y. C.R.R. § 8000.1(a), and the opinion in *Gagnon* having come down some seven years prior to revocation of plaintiff's parole, there is clearly a reasonable basis for inferring both that defendant Hammock had failed to meet his statutory responsibilities, and that such failure was causally related to the deprivation of plaintiff's right to counsel. *See Fowler v. Cross* (5th Cir. 1981) 635 F.2d 476, 484; *Duchesne v. Sugarman* (2d Cir. 1977) 566 F.2d 817, 830–33.[9]

We turn, then, to those persons most closely connected with the facts of plaintiff's revocation of parole: defendants Cutler, Mazzamurro, Giacopello, Mullen, Fowler and Viola, the first two of whom presented the case against plaintiff at his preliminary and final revocation hearings, respectively; and the last four of whom presided over various portions of those hearings. These defendants claim to be absolutely immune from liability for their part in revocation of plaintiff's parole. *See generally Butz v. Economou, supra,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895.

Neither the Supreme Court, *see Martinez v. California* (1980) 444 U.S. 277, 285 n. 11, 100 S.Ct. 553, 559 n. 11, 62 L.Ed.2d 481, nor the Second Circuit has yet addressed the nature of the immunity from liability enjoyed by employees of the Division of Parole for actions taken in the course of their official duties.[10] In *Harlow v. Fitzgerald* — U.S. ——, ——, 102 S.Ct. 2727, 2734, 73 L.Ed.2d 396 (1982). However, the Supreme Court reaffirmed the "'functional' approach to immunity law" most prominently set forth in *Butz v. Economou, supra.* Under this approach, those officials performing judicial, prosecutorial, and leg-

---

**8.** Defendant Hammock would at best be entitled to a qualified good faith immunity. *See infra.* The Supreme Court has recently clarified, however, that such a defense will ordinarily fail where a defendant's responsibility was clear and where—as here—the law was clearly established at the time in question. *Harlow v. Fitzgerald,* —— U.S. ——, ——, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

**9.** In light of our ruling, we need not determine prior to discovery the further questions whether plaintiff has demonstrated a sufficient causal relationship between defendant Hammock and the Division's failure to comply either with its own procedures regarding right to counsel, or with the October 11, 1980 order of the New York Supreme Court.

**10.** Those Circuit Courts which have addressed the issue have seemingly split. *Compare Sellars v. Procunier* (9th Cir. 1981) 641 F.2d 1295, 1302, *cert. denied,* —— U.S. ——, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981) (absolute immunity for actions taken in processing applications for parole); *Fowler v. Cross* (5th Cir. 1981) 635 F.2d 476 (qualified immunity only); *Douglas v. Muncy* (4th Cir. 1978) 570 F.2d 499 (absolute immunity); *Thompson v. Burke* (3d Cir. 1977) 556 F.2d 231 (nature of immunity depends on conduct attacked). *See also DeShields v. United States Parole Commission* (8th Cir. 1979) 593 F.2d 354, 356 (unresolved).

islative functions are granted absolute immunity for actions taken in the course of such functions. The Court emphasized, however, (—— U.S. at ——, 102 S.Ct. at 2734) that:

"[T]his protection has extended no further than its justification would warrant. In *Gravel,* for example, we emphasized that Senators and their aides were absolutely immune only when performing 'acts legislative in nature,' and not when taking other acts even 'in their official capacity.' Our cases involving judges and prosecutors have followed a similar line." (Citations and footnotes omitted.)

*See generally, Harlow,* —— U.S. at ——, nn. 15, 16, 102 S.Ct. at 2735, nn. 15, 16, and cases therein cited.

■ Applying these principles to the case at bar, we readily conclude that defendants Cutler, Mazzamurro, Giacopello, Mullen, Fowler and Viola are entitled to absolute immunity for their actions in initiating the revocation proceedings, and in presenting and evaluating the evidence against plaintiff. There can be no question that in weighing the evidence against a releasee a hearing officer performs a quasi-judicial function, or that the officers who initiate and present the case against the releasee are engaging in quasi-prosecutorial conduct. Such acts lie at the very heart of the judicial and prosecutorial roles. *See, e.g., Imbler v. Pachtman* (1976) 424 U.S. 409, 430, 96 S.Ct. 984, 994, 47 L.Ed.2d 128. We accordingly dismiss in their entirety the third, fourth, and fifth claims of the Complaint.

Plaintiff's right to counsel claims, however, are more troublesome. Defendants assert that any failure on their part to provide plaintiff with counsel at the revocation hearings necessarily falls within the protective penumbra of their quasi-judicial and quasi-prosecutorial duties. Plaintiff urges to the contrary that defendants' obligations at least to inform him of his rights, make a determination as to whether he was entitled to counsel, and if so secure it for him, are both mandatory and administrative in nature—much like a policeman's obligation, for example, to honor the Sixth Amendment right to counsel of an incarcerated defendant. *See Pierson v. Ray* (1967) 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288; *O'Hagan v. Soto* (S.D.N.Y. January 22, 1982) slip op. No. 80–1192; *O'Hagan v. Soto* (S.D.N.Y. 1981) 523 F.Supp. 625, 629–30.

■ As to defendants Cutler and Mazzamurro—who presented the case against plaintiff at his preliminary and final revocation hearings—we find plaintiff's argument the more compelling. It is not traditionally a prosecutorial responsibility to assist the accused in securing counsel. Moreover, it is clear that these defendants were invested by Division procedures with certain administrative responsibilities towards plaintiff. We therefore conclude that, as to the claims set forth against them in the first and second count of the Complaint, these defendants are entitled at best to a qualified good faith immunity.[11]

■ The problem is more complex, however, as to those defendants who presided over the revocation hearings. We have no doubt that the broad immunity granted state and federal judges would in analogous circumstances protect such judges from liability under 42 U.S.C. § 1983 to one convicted of a crime without assistance of counsel in violation of the *per se* rule announced in *Gideon v. Wainwright* (1963) 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799.[12] It does not necessarily follow, however, that persons who perform *both* judicial *and* administrative functions, and who thus may not enjoy

11. Plaintiffs argue that these defendants' obligations with respect to plaintiff's right to counsel were mandatory, rather than discretionary, and that the qualified immunity described in *Harlow* is accordingly inapposite. We disagree. Although it was clearly incumbent on the Division of Parole, as an entity, to ensure plaintiff's due process right to counsel was at least addressed, if not honored, we cannot now find as a matter of law that the due process clause placed any of these individual defendants under an absolute obligation to act: such determination must await a more detailed delineation of the division of responsibility among employees of defendant Division of Parole than we have yet been afforded.

12. *See, e.g., Stump v. Sparkman* (1978) 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (a "judge will not be deprived of immunity because the action he took was in

the independence of the true judiciary, should be accorded an immunity equally broad in scope. *See generally, Butz, supra,* 438 U.S. at 513–14, 98 S.Ct. at 2914 (emphasizing safeguards afforded by the Administrative Procedure Act to the independence of the executive officers there afforded quasi-judicial immunity). We conclude that, as to the hearing officer defendants (defendants Giacopello, Mullen, Fowler and Viola), this issue cannot be resolved on the record now before us, but must await a searching inquiry into whether, and to what extent, these officers were actually or potentially subject to the orders of others in the performance of their official duties, and whether and to what extent they were or could be called upon to perform duties more properly characterized as administrative rather than judicial.

### Conclusion

In sum, defendants' motion for summary judgment is granted as to defendants Abrams and Division of Parole. As to the remaining defendants, it is granted only as to the third, fourth and fifth claims of the Complaint, and otherwise denied.

SO ORDERED.

error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction,' " quoting *Bradley v. Fisher* (1872) 80 U.S. (13 Wall.) 335 at 351, 20 L.Ed. 646).